Duane, Morris & Heckscher, LLP, Eve I. Klein, New York, NY, for Plaintiffs.

Ross & Hardies, Richard A. Wilsker, Seth Goodchild, New York, NY, for Defendant.

Kumar **REALITE**, et al., Plaintiffs,

v.

**ARK RESTAURANTS CORP.,**
**et al., Defendants.**

No. 97 CIV. 7756(SS).

United States District Court,
S.D. New York.

May 15, 1998. ·

### *MEMORANDUM OPINION AND ORDER*

SOTOMAYOR, District Judge.

In this collective action brought pursuant to the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201 *et seq.*, and New York and New Jersey state labor laws, the Court has before it what it deems a motion for reconsideration of its earlier ruling authorizing class notice to be sent to potential plaintiffs. For the reasons discussed below, the Court affirms its earlier ruling and approves the class definition proposed by plaintiffs for notice purposes.

### *BACKGROUND*

The thirty-seven named plaintiffs in this action are current or former hourly paid,

non-managerial employees of fifteen restaurants owned and/or managed by defendant Ark Restaurants Corp. ("Ark"). All fifteen restaurants in question (hereafter, "the 15 Ark Restaurants") are located in the New York City metropolitan area: 14 are located in Manhattan, one is located in New Jersey. Also individually named defendants in this action, the 15 Ark Restaurants are not theme restaurants. They bear different names and feature different menus and atmospheres. Plaintiffs have collectively held a variety of job positions at the restaurants, including waiter, porter, dishwasher, cook, backwaiter, bartender, runner, pizza maker, busboy, and security guard. Many of the plaintiffs have worked at several of these positions during the course of their employment with Ark. Many plaintiffs also have worked at more than one of the 15 Ark Restaurants. Twenty-four additional plaintiffs have opted into this lawsuit since it was filed.

Plaintiffs allege in their First Amended Complaint (the "Complaint") that defendants engaged in a widespread and multi-faceted scheme to avoid paying minimum wages and overtime pay to non-managerial employees, as required by the FLSA. It is undisputed that plaintiffs are all non-exempt employees covered by the FLSA.[1] As part of this scheme, the Complaint alleges that defendants paid their hourly employees a "shift rate" or "weekly rate" regardless of the number of hours actually worked, failed to pay employees overtime for hours worked over 40 per week, required employees to work "off the clock" with no compensation, failed to use time clocks or sign-in sheets, failed to keep adequate records, improperly required service employees to share their tips with non-service employees, failed to explain how the tip credit worked, failed to reimburse employees for uniform purchases and maintenance expenses, and improperly denied employees meal breaks or vacation benefits.

Plaintiffs concede that all of the above violations may not have occurred at each of the 15 Ark Restaurants, and that offending compensation practices may have varied somewhat among the restaurants. Nevertheless, plaintiffs allege that the basic scheme—to avoid paying overtime and minimum wages—was undertaken at all 15 Ark Restaurants with the knowledge and approval of the corporate parent, Ark, and moreover, that Ark controlled the employment and compensation practices at each of the 15 Ark Restaurants. In that regard, the Complaint alleges that all or some of Ark's officers and directors are the sole or principal officers of the 15 Ark Restaurants, that Ark's corporate officers frequently sign payroll checks for employees at the 15 restaurants, and that following the filing of this lawsuit, Ark's CEO personally addressed employees of three of the 15 Ark Restaurants regarding some of the corporate overtime and payroll practices challenged in this action. Finally, the Complaint, which seeks both injunctive and monetary relief, alleges that some plaintiffs have been subject to retaliatory practices by defendants since the filing of this lawsuit.

On January 16, 1998, this Court ruled during a status conference that plaintiffs were entitled under the FLSA to send out notice of the action to potential plaintiffs who are "similarly situated" to them. See 29 U.S.C. § 216(b) (permitting actions for FLSA violations to be maintained "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated"). However, the Court did not at that time approve any proposed form of class notice. Rather, the Court instructed the parties to try first to reach an agreement between themselves on the form of notice to be sent and who should receive it.

The parties have not been able to reach agreement. Their chief dispute concerns the appropriate scope of the class definition. Plaintiffs want to define the proposed class to include:

> all hourly-paid, non-managerial employees (e.g., waitstaff, bartenders, servers, bus-

---

**1.** Sections 206 and 207 of the FLSA generally require that employers pay hourly employees a specific minimum rate per hour (now $4.75) for up to 40 hours per week and overtime compensation at one and a half times the regular hourly rate for hours worked in excess of 40 hours. 29 U.S.C. §§ 206, 207. Although the FLSA exempts certain categories of employees from these mandatory provisions, it is undisputed that none of those exemptions apply here.

boys, back waitstaff, kitchen workers, porters, dishwashers, cooks, assistant cooks, salad makers, mixers-bakers, pizza makers, prep cooks, security guards, or any equivalent) who work or worked at one or more of the 15 Ark Restaurants during the past six years, and who (i) worked overtime during that period, (ii) did not receive minimum cash wages for all hours worked, (iii) did not have working time properly recorded, (iv) had to purchase or maintain uniforms, (v) did not receive agreed upon vacation time, (vi) were not allowed meal breaks, or (vii) were not informed about tip credit rules, or were required to pool tips with managerial or non-service employees. (See plaintiffs' March 16, 1998 letter to the Court.)

Defendants object to this proposed class definition on the grounds that plaintiffs have failed to show any commonality in how employees were compensated at different Ark restaurants, or in how employees holding different positions within the same restaurant were compensated. (*See* Defendants' March 16, 1998 letter to the Court.) In support of their position, defendants offer the affidavit of Vincent Pascal, Ark's Vice President and Secretary, in which Mr. Pascal states that the 15 Ark Restaurants are "entirely separate operations" that independently control the compensation of employees within each restaurant. (Pascal Aff. ¶ 2–3.) Therefore, defendants submit, any pay determinations complained of by plaintiffs "were made by different supervisors and were not part of a single common plan or policy." (Pascal Aff. ¶ 4.) Second, Mr. Pascal asserts that compensation arrangements differed among employees holding different jobs within the same restaurant (i.e., a bartender was not paid in the same way as a dishwasher). (Pascal Aff. ¶ 7.) For this reason as well, defendants argue that the named plaintiffs' individual claims in this action are distinct from each other and are not suitable to class representation.

Defendants insist that if class notice is to be permitted at all, it must be narrowly circumscribed, so that a named plaintiff can represent only those employees who held the same exact job position at the same exact restaurant. For example, under defendants' approach, a plaintiff who worked as a dishwasher at American Place (one of the 15 Ark Restaurants) can represent and send notice only to other current and former dishwashers at American Place. That plaintiff can not, however, represent dishwashers at other Ark Restaurants. Nor can that plaintiff represent employees at American Place who held job positions other than dishwasher.

Defendants' proposal to circumscribe notice along these narrow lines is obviously contrived. What defendants really are arguing, without saying so directly, is that any class notice would be inappropriate because the named plaintiffs themselves are not "similarly situated." This argument deserves further consideration. At the time I authorized class notice on January 16, I did not have before me Mr. Pascal's affidavit or any affidavits from the plaintiffs. Accordingly, I have decided to treat defendants' March 16 letter as a motion for reconsideration of the class notice issue. Toward this end, I asked plaintiffs to submit sworn affidavits in support of their claim that a definable group of "similarly situated" plaintiffs and potential plaintiffs exists. The Court has now reviewed the following documents bearing on the class notice issue: the pleadings, defendants March 16, 1998 letter enclosing the affidavit of Vincent Pascal; plaintiffs' March 16, 1998 letter and March 20, 1998 response to defendants' March 16 submission; plaintiffs' April 24, 1998 letter enclosing the affidavits of ten named plaintiffs; and defendants' May 7, 1998 response to plaintiffs' April 24 submission. After considering these submissions and defendants' arguments, I conclude that my initial ruling authorizing class notice was correct, and that plaintiffs' proposed class definition is appropriate.

### DISCUSSION

This Court recently discussed the law governing class notice under the FLSA in *Hoffmann v. Sbarro,* 982 F.Supp. 249, 262–262 (S.D.N.Y.1997), where I stated:

It is well settled that district courts have the discretionary power to authorize the sending of notice to potential class members in a collective action brought pursuant

to § 216(b) of the FLSA. *Hoffmann–La Roche v. Sperling,* 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989); *Braunstein v. Eastern Photographic Laboratories, Inc.,* 600 F.2d 335, 336 (1978) (court-authorized notice in an appropriate case "comports with the broad remedial purpose of the [FLSA], ... as well as with the interest of the courts in avoiding multiplicity of suits") (footnote omitted). The question, therefore, is not whether the Court has the power to authorize the notice, but whether the "appropriate" circumstances exist for the Court to exercise its discretion in this matter.

The threshold issue in deciding whether to authorize class notice in an FLSA action is whether plaintiffs have demonstrated that potential class members are "similarly situated." *See* 29 U.S.C. § 216(b). Neither the FLSA nor its implementing regulations define the term "similarly situated." However, courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law. *See Jackson v. New York Telephone Co.,* 163 F.R.D. 429, 431 (S.D.N.Y.1995) (at the preliminary notice stage, "plaintiffs are only required to demonstrate a factual nexus that supports a finding that potential plaintiffs were subjected to a common discriminatory scheme"); *Krueger v. New York Telephone Co.,* 1993 WL 276058 (S.D.N.Y. July 21, 1993) (when the litigation is in its early stages, plaintiffs need only provide "some factual basis from which the court can determine if similarly situated plaintiffs exist"); *Schwed v. General Electric Co.,* 159 F.R.D. 373, 375–76 (N.D.N.Y.1995) ("plaintiffs need only describe the potential class within reasonable limits and provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist"); *Heagney v. European American Bank,* 122 F.R.D. 125, 127 (E.D.N.Y.1988) (requiring "some identifiable factual nexus which binds the named plaintiffs and potential class members together as victims of a particular alleged discrimination") (quoting *Palmer v. Read-*

*er's Digest Ass'n,* 42 Fair Empl. Prac. Cas. (BNA) 212, 1986 WL 11458 (S.D.N.Y. 1986)). The burden on plaintiffs is not a stringent one, and the Court need only reach a preliminary determination that potential plaintiffs are "similarly situated." *See, e.g., Jackson,* 163 F.R.D. at 431 ("The inquiry at the inception of the lawsuit is less stringent than the ultimate determination that the class is properly constituted.")....

Nor must this Court wait for defendant to complete its discovery before authorizing class notice. To the contrary, [so long as the "similarly situated" requirement has been met], courts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management. *See Braunstein,* 600 F.2d at 336 (notice to potential plaintiffs "comports with the broad remedial purpose of the Act, which should be given a liberal construction, as well as with the interest of the courts in avoiding multiplicity of suits"); *Frank v. Capital Cities Communications, Inc.,* 88 F.R.D. 674, 676 (S.D.N.Y.1981) ("the experiences of other employees may well be probative of the existence vel non of a discriminatory practice, thereby affecting the merits of the plaintiffs' own claims"); *Schwed,* 159 F.R.D. at 375 ("[E]ven where later discovery proves the putative class members to be dissimilarly situated, notice ... prior to full discovery is appropriate as it may further the remedial purpose of the [FLSA]."), *Cook v. United States,* 109 F.R.D. 81, 83 (E.D.N.Y.1985) ("Certainly, it is 'unlikely that Congress, having created a procedure for representative action, would have wanted to prevent the class representative from notifying other members of the class that they had a champion.' ") (citation omitted); *Krueger,* 1993 WL 276058 at *2 ("[E]ven if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in this case.").

Applying these principles, I affirm my earlier finding that plaintiffs are entitled under the FLSA to send notice to the class of individuals proposed by plaintiffs. In addition to the substantial allegations in plaintiffs' Complaint, plaintiffs have submitted ten affidavits uniformly indicating that hourly-paid employees at the 15 Ark Restaurants were paid fixed rates regardless of the number of hours actually worked, that they were not paid overtime compensation even though they regularly worked more than 40 hours per week, and that the 15 Ark Restaurants did not use time clocks or sign-in sheets or any other system to keep track of the actual number of hours they worked. Significantly, the affidavits further indicate that these practices were not limited to a single Ark restaurant or a single employee position. Rather, plaintiffs' affidavits state that these compensation practices remained the same even when they changed job positions within a given restaurant or transferred to one of the other 15 Ark Restaurants. See Diaz Aff. ¶¶ 4–7 (stating he was not paid overtime either as a porter or dishwasher at Ernie's); Gil Aff. ¶¶ 4–6 (stating he was not paid overtime as cook at Canyon Road or Albuquerque Eats); Grande Aff. ¶¶ 4–7 (stating he was not paid overtime in any of the five positions he held at Perretti's and Columbus Bakery); Romero Aff. ¶¶ 4–10 (stating he was not paid overtime while porter, prep cook or cook at Albuquerque Eats or Gonzalez y Gonzalez); Mendez Aff. ¶¶ 3, 8 (stating he was not paid overtime as backwaiter or runner at American Place); Matias Aff. ¶ 4 (stating he was not paid overtime as dishwasher, porter or busboy at Perretti's); Broom Aff. ¶ 4 (stating he was not paid overtime as waiter at Bryant Park Grill); Santana Aff. ¶¶ 4–5 (stating he was not paid proper overtime as salad man or cook at B. Smith's).

Three of the plaintiffs' affidavits also provide some factual support for plaintiffs' allegations that defendants violated tip credit requirements. See Cabrera Aff. ¶ 4 (stating he was forced to pay out 35% tips while waiter at two of the 15 Ark Restaurants, although neither restaurant explained tip credit); Koetje Aff. ¶ 6 (stating he was subjected to same tip out requirements while he was waiter and bartender at three of the 15 Ark Restaurants, although none of the restaurants explained tip credit); Mendez Aff. ¶ 4 (stating he was required to share tips with general manager, a non-service employee, and to give 2% of tips to restaurant to cover charge card companies' charges, although restaurant did not explain tip credit).[2] During the parties' telephone conference on May 14, 1998, plaintiffs' counsel represented that plaintiffs who worked at 4 more of the 15 Ark Restaurants are similarly prepared to testify that they were improperly required to pay for their own uniform expenses and denied meal breaks or vacation benefits. Counsel said she will provide the Court with such affidavits within a week.[3]

■ As to defendants' contention that the 15 Ark Restaurants are separate establishments not centrally controlled by Ark, plaintiffs' affidavits show that, at a minimum, this is a contested area of fact requiring discovery. Plaintiffs insist in their affidavits that Vincent Pascal was a regular presence at all 15 Ark Restaurants, so much so that restaurant employees knew him as "Vinnie" and

**2.** In determining the wage of a tipped employee, the FLSA permits an employer to treat a portion of the employee's tips as a credit against the employer's minimum wage and overtime compensation obligations. See 29 U.S.C. § 203(m). However, the tip credit is allowed only if "such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee." Id. See also Reich v. Chez Robert, Inc., 28 F.3d 401, 403 (3d Cir.1994); Martin v. Tango's Restaurant, Inc., 969 F.2d 1319, 1322 (1st Cir.1992). The FLSA's tip credit rules do not prohibit the pooling of tips "among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m). Here, plaintiffs allege that defendants violated the tip credit rules both by not explaining the tip credit to employees and by requiring tipped employees to share tips with non-service employees who would not regularly receive tips.

**3.** The Court notes that it is permitting plaintiffs' class notice to include allegations of violations involving uniform maintenance, meal breaks and vacation benefits, on the premise that the affidavits plaintiffs are to submit next week will support these allegations. However, should plaintiffs' additional affidavits not be forthcoming, or should they be inadequate, the Court will exclude these subject matters from inclusion in the notice.

often saw him several days a week. (*See* Gil Aff. ¶ 2; Grande Aff. ¶ 2; Mendez Aff. ¶ 2; Matias Aff. ¶ 2; Broom Aff. ¶ 2; Koetje Aff. ¶ 2; Cabrera Aff. ¶ 2.) Moreover, plaintiffs state that, from Pascal's actions, they and other employees understood him to be the person in charge of pay increases, overtime and personnel issues for the 15 Ark Restaurants. (*See* Matias Aff. ¶¶ 2, 6–8; Grande Aff. ¶¶ 2, 10, 12; Santana Aff. ¶ 9, Gil Aff. ¶¶ 7–9.) The affidavits further state that Pascal regularly met with restaurant managers, gave managers directions, and attended restaurant staff meetings. (*See* Broom Aff. ¶¶ 5–9; Matias Aff. ¶ 6.) These statements support the Complaint's allegations that certain Ark personnel centrally controlled compensation practices within the 15 Ark Restaurants.

I find that the allegations in the Complaint, together with plaintiffs' affidavits, establish enough of a factual nexus between plaintiffs' situation and the situation of other current and former hourly paid employees at the 15 Ark Restaurants to determine that they are "similarly situated." This finding is bolstered by the fact that Ark has already publicly stated, in its latest 10–Q filing with the SEC, specifically with respect to this lawsuit, that "[t]he Company believes that there were certain violations of various labor laws." *See Hoffmann v. Sbarro*, 982 F.Supp. at 261–262 (defendant's admission that some employees were subjected to FLSA violations supports preliminary finding that other employees may similarly have been subject to violations and are entitled to notice). Accordingly, the Court holds that plaintiffs are entitled to notify all hourly paid employees who worked at the 15 Ark Restaurants within the last six years of the pendency of this lawsuit.[4] It will then be up to those individuals to decide whether they wish to opt-in to this action.

Finally, the Court underscores that it is certifying the proposed class only for notice and discovery purposes. I am not holding at this time that all members of the proposed class who will be sent notices are, in fact, similarly situated to plaintiffs. Far too little discovery has been taken for this Court to make such a determination now. Furthermore, should discovery reveal that plaintiffs in fact are not similarly situated, or that only plaintiffs who worked in the same Ark restaurant or who held the same job type are similarly situated, I may later decertify the class, or divide the class into subgroups, if appropriate. *See, e.g., Lusardi v. Xerox Corp.*, 122 F.R.D. 463 (D.N.J.1988) (decertifying ADEA class after discovery evinced there was no common company policy or practice, and that lack of commonality would require individual trials). However, at this early juncture, when a large number of current and former employees of the 15 Ark Restaurants have already opted into the case, principles of efficiency and judicial economy militate in favor of maintaining this action as a collective one, and waiting to see what the facts bear out. *See Krueger, supra*, 1993 WL 276058, *2 ("Even if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in this case."). By contrast, neither judicial economy nor the FLSA's broad remedial purpose would be served by limiting notice along the severely and artificially circumscribed lines proposed by defendants.

In closing, I will briefly address two cases to which defendants have appealed for support in this matter. Both are easily distinguishable. First, in *Belcher v. Shoney's Inc.*, 927 F.Supp. 249 (M.D.Tenn.1996), employees of Shoney's restaurants brought a collective action under the FLSA on behalf of all hourly paid employees who worked in the defen-

---

4. The maximum statute of limitations for a claim under the FLSA is three years. *See* 29 U.S.C. § 255. However, plaintiffs in this action are also seeking relief under New York' labor laws, which provide a six year statute of limitations. *See* New York Labor Law § 198(3) (McKinney's). Accordingly, the Court authorizes notice to restaurant employees who worked for the 14 Ark restaurants located in New York to go back six years. As to the one Ark Restaurant located in New Jersey, the three-year FLSA statute of limitations applies because New Jersey's statute of limitations is only 2 years. *See* N.J.S.A. 34:11–56a25.1. In any event, the Court understands that that particular restaurant has been open less than three years.

dant's restaurants nationwide. The Court allowed the notice, but limited it to prospective plaintiffs who worked at Shoney's theme restaurants, not at the defendant's other concept restaurants. *Id.* at 252. In doing so, the Court noted that none of the named plaintiffs were employed at these other concept restaurants, and further, that the only opt-in plaintiff who had worked at any of these other concept restaurants had done so 12 years prior to the lawsuit and thus had no actionable claim under the FLSA's three-year statute of limitations. *Id.*

Analogizing this case to *Shoney's,* defendants attempt to argue that plaintiffs are not similarly situated because the 15 Ark Restaurants are not concept or theme restaurants. This is an analogy without reason. In *Shoney's,* the Court understandably omitted other nationwide theme restaurants from the class notice because the plaintiffs had offered no shred of evidence, and had no basis for alleging, that employees at those restaurants had experienced FLSA violations. These other theme restaurants were sued on the sole grounds that they were commonly owned by the defendant. In contrast, in this action at least one named plaintiff has worked at each of the 15 Ark Restaurants and is claiming to have personally been subject to FLSA violations at that restaurant. Opt-in plaintiffs from these same restaurants have joined in the claims. Furthermore, in contrast to *Shoney's,* the number of restaurants challenged in this lawsuit is small and all of them are located within in a single geographical region allegedly overseen by the same person or persons from Ark headquarters. If anything, *Shoney's* supports the proposition that class notice is warranted under these circumstances. Indeed, the Court in *Shoney's* authorized notice to hourly paid employees of Shoney's chain restaurants throughout the nation, finding that all such employees were "similarly situated" whether or not a named plaintiff had worked at each particular Shoney's location.

A second case to which defendants cite for support is *Ray v. Motel 6 Operating, Limited Partnership,* 1996 WL 988231 (D.Minn. 1996). In *Motel 6,* where assistant managers of the defendants' motel facilities sued for unpaid overtime, the Court refused to authorize nationwide class notice for lack of commonality. The Court based its decision on an extensive factual record indicating that management compensation decisions were implemented within the company on a decentralized, region-by-region level. *Id.* at *4. Significantly, in denying nationwide class notice the Court advised the *Motel 6* plaintiffs that "nothing in this memorandum should be construed as prohibiting Plaintiffs from bringing anew a similar request for authorization for class notice on a smaller scale, such as region by region." *Id.* Anything but subtle, this message conveyed that class notice on a regional basis would mostly likely be approved by the Court.

I am at a loss to see how the *Motel 6* decision helps the defendants' position here. Plaintiffs in the present action are asking to send notice to the employees only of the 15 Ark Restaurants located within the New York City area, even though Ark owns and operates restaurants elsewhere in the country. Plaintiffs' request is, thus, not overbroad. In addition, unlike *Motel 6,* where the Court had all of the relevant facts before it when making its determination, much more discovery is needed in this case before I can conclusively determine whether the plaintiffs and other potential class members are similarly situated. As I stated earlier, this Court may decertify the class if, as in *Ray,* discovery shows that no common practice or plan existed. However, at this early stage of the litigation, plaintiffs by their affidavits have sufficiently shown commonality to justify the notice they seek.

### CONCLUSION

For the reasons discussed, the Court authorizes plaintiffs to send notice of the pendency of this lawsuit to the class of persons proposed by plaintiffs, and approves plaintiffs' draft notice subject to the modifications discussed during the parties' May 14, 1998 teleconference with the Court. Plaintiffs must submit the modified notice to this Court for final approval no later than May 25, 1998. Any objections defendants have to the modified notice must be submitted to the Court by that same date. Defendants are further-

**310**

more ordered to provide plaintiffs, no later than May 21, 1998, with a list of current and former hourly paid employees who worked at the 15 Ark Restaurants during the last six years (except for the one New Jersey restaurant, for which defendants need only list hourly paid employees within the last three years). Any difficulties defendants encounter in meeting this deadline should be brought to the Court's attention immediately. Finally, the Court notes for the record that at the parties' May 14 conference, the Court ordered that under no circumstances are plaintiffs or plaintiffs' counsel to provide defendants' employee list to the union that is funding plaintiffs' fees and costs in this litigation.

**SO ORDERED.**