Michael **PUGLISI, Faina Miller, Kathleen Hurst, Sadia Syed and Clayton Mills, Plaintiffs,**

v.

**TD BANK, N.A., Defendant.**

**No. CV 13–00637(LDW)(GRB).**

United States District Court, E.D. New York.

Feb. 25, 2014.

Deirdre Anne Aaron, Jennifer Lin Liu, Justin Mitchell Swartz, Outten & Golden LLP, New York, NY, Gregg I. Shavitz, Keith Michael Stern, Paolo C. Meireles, Susan H. Stern, Shavitz Law Group, P.A., Boca Raton, FL, Marijana F. Matura, Troy L. Kessler, Shulman Kessler LLP, Melville, NY, for Plaintiffs.

Jonathan Shapiro, Fisher & Phillips LLP, Portland, ME, Steven Siegel, Fisher & Phillips LLP, Fort Lauderdale, FL, Jason Alex Storipan, Kathleen M. Caminiti, Fisher & Phillips LLP, Murray Hill, NJ, for Defendant.

### ORDER

GARY R. BROWN, United States Magistrate Judge:

Michael Puglisi, Faina Miller, Kathleen Hurst, Sadia Syed, and Clayton Mills (collectively, "plaintiffs") brought this action against their former employer, TD Bank, N.A. ("TD Bank" or "defendant"). Plaintiffs, who were TD Bank Assistant Store Managers ("ASMs"), allege that defendant has violated the Fair Labor Standards Act ("FLSA") and similar state labor laws. *See generally* Second Amended Complaint ("Am. Compl."), Jan. 24, 2014, DE [49]. The Second Amended Complaint alleges that defendant unlawfully treated ASMs as exempt from federal and state overtime provisions, and, as a result, defendant wrongfully withheld overtime wages from plaintiffs and other similarly situated employees. Am. Compl. ¶¶ 6–10.

### PROCEDURAL BACKGROUND

On, August 28, 2013, plaintiffs filed a motion for conditional certification of this lawsuit as a collective action ("Motion") pursuant to FLSA § 16(b), 29 U.S.C. § 216(b). Through this Motion, plaintiffs seek to obtain from defendant the names, last known mailing addresses and telephone numbers of current and former ASMs, such that they may provide notice of the action to these potential members of a collective action. *See generally* Motion to Conditionally Certify Class ("Mot."), DE [34]. Plaintiffs named as a purported class for the collective action all "current and former [ASMs] employed by Defendant between February 4, 2010 and the present." Mot. 1. Defendant filed an opposition to plaintiff's Motion ("Opposition") on October 4, 2013. *See generally* Opposition to Pl.'s Mot. ("Opp'n"), DE [39].

### FACTUAL BACKGROUND

Plaintiffs allege the following: Plaintiffs were ASMs who worked in defendant's bank branches in New York, New Jersey, and Pennsylvania. Am. Compl. ¶¶ 16–33. ASMs typically work more than forty hours per week. *Id.* ¶ 8. Defendant, a financial institution with more than 1,315 branches in fifteen states and the District of Columbia, has a nationwide policy "to uniformly classify ASMs as exempt from federal and state overtime provisions and not to pay ASMs any overtime wages." *Id.* ¶¶ 2–7.

ASMs—despite their managerial job titles—primarily performed non-exempt, non-managerial job duties, such as work-

ing as bank tellers, counting money in the vault, opening and closing the branch, and selling basic banking products. Am. Compl. ¶ 9; Mot. 2. ASMs did not primarily perform managerial job duties; for example, they did not primarily hire, fire, evaluate, or promote bank employees. Mot. 1–2. Thus, plaintiffs claim that ASMs should not fall under any type of "executive exemption"—as defined by FLSA or any other state laws—from overtime pay. Am. Compl. ¶¶ 10–12; Mot. 1–2.

In support of their Motion, plaintiffs have submitted thirteen affidavits from various ASMs, copies of past ASM job openings, the TD Bank general employee handbook, and other documents to show that plaintiffs and other ASMs across the nation are similarly situated and that ASMs mainly performed non-managerial, non-exempt work. Mot. Exs. C–G, Aug. 28, 2013, DE [34].

Defendant essentially argues that plaintiffs and other ASMs are not similarly situated for purposes of granting conditional certification. Defendant claims that plaintiffs' supporting affidavits should not be considered because they are "cookie-cutter" and "conclusory." Opp'n 1–2. Defendant also claims that the affiants did not actually read the affidavits because the documents contain identical errors, such as using the term "Interchange Bank" (rather than "TD Bank") in some paragraphs. *Id.* at 2.

Defendant also submitted its own supporting affidavits of forty other ASMs who claim that they actually performed managerial job duties. Defendants contend that these affidavits "conclusively" demonstrate that plaintiffs are not similarly situated to the proposed class and that the "propriety of each ASM's exempt status must be individually determined." *Id.* at 2–3.

## DISCUSSION

### A. Legal Standard

*Executive Exemption*

The FLSA mandates the following:

[N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). Employees who work in a "bona fide executive" capacity are exempted from these FLSA overtime requirements. 29 U.S.C. § 213(a)(1). Employees are "executives" if

1) they are "[c]ompensated on a salary basis"; 2) their "primary duty is management of the enterprise ... or of a customarily recognized department or subdivision thereof"; 3) they "customarily and regularly direct[ ] the work of two or more other employees"; and 4) they "ha[ve] the authority to hire or fire other employees" or if their "suggestions and recommendations" on personnel decisions "are given particular weight."

*Myers v. Hertz Corp.,* 624 F.3d 537, 548 (2d Cir.2010) (alterations in original) (*quoting* 29 C.F.R. § 541.100(a)(1)-(4)).

*Two–Step Certification of a Collective Action*

Under 29 U.S.C. § 216(b), plaintiffs in this action, who are suing under § 207's overtime provisions, may proceed "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). This is known as a

"collective action." *See Myers,* 624 F.3d at 543; *Ahmed v. T.J. Maxx Corp.,* 2013 WL 2649544, at *7 (E.D.N.Y. June 8, 2013). A collective action under the FLSA is different from the typical class action under the Federal Rules of Civil Procedure, the strict requirements of which—numerosity, commonality, typicality, and adequate representation—do not apply to a collective action. *See* Fed.R.Civ.P. 23; *Ahmed,* 2013 WL 2649544, at *7 ("A collective action under Section 216 is distinguishable in several ways from the more common class action under [Federal Rule of Civil Procedure] 23.... [A] party seeking conditional certification of a collective action need not demonstrate the Rule 23 requirements of numerosity, commonality, typicality, and adequacy of representation."). Furthermore, in a collective action, the potential class members must affirmatively "opt in" to the action. *See Genesis Healthcare Corp. v. Symczyk,* 569 U.S. ——, 133 S.Ct. 1523, 1530, 185 L.Ed.2d 636 (2013).

 Certification of a collective action class is analyzed under a two-step process. At issue herein, the first step, "conditional certification," generally takes place before any significant discovery. Conditional certification imposes a "minimal burden" and is satisfied if the potential class members are "similarly situated," based on pleadings, affidavits, and other submitted documents. *Kalloo v. Unlimited Mech. Co. of NY, Inc.,* 908 F.Supp.2d 344, 346 (E.D.N.Y.2012). If the similarly-situated requirement's minimal burden is met, then the class is "conditionally certified" as a collective action. *See id.*

 The first step requires only a "modest factual showing sufficient to demonstrate that [plaintiffs] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Jenkins v. TJX Companies Inc.,* 853 F.Supp.2d 317, 321 (E.D.N.Y.2012) (inter-

nal quotation marks omitted). The burden at this first step is minimal because even if the court determines that the potential class members are "similarly situated," such a determination is preliminary and it "may be modified or reversed at the second certification [step]." *Kalloo,* 908 F.Supp.2d at 346; *see also Lee v. ABC Carpet & Home,* 236 F.R.D. 193, 197 (S.D.N.Y.2006).

 It should be noted that "[a] named plaintiff is not required to show an actual FLSA violation at this stage, but rather only that a factual nexus exists between the plaintiff's situation and the situation of other potential plaintiffs." *Calderon v. King Umberto, Inc.,* 892 F.Supp.2d 456, 459 (E.D.N.Y.2012) (internal quotation marks omitted); *see also Young v. Cooper Cameron Corp.,* 229 F.R.D. 50, 54 (S.D.N.Y.2005) (same). "At this conditional certification stage, the focus of the inquiry is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." *Kalloo,* 908 F.Supp.2d at 346 (internal quotation marks omitted); *see also Krueger v. N.Y. Tel. Co.,* 1993 WL 276058, at *2 (S.D.N.Y. July 21, 1993) ("the Court need not evaluate the merits of plaintiffs' claims in order to determine whether a 'similarly situated' group exists.").

 Furthermore, conditional certification "does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." *Genesis Healthcare,* 133 S.Ct. at 1530.

At the second step, after discovery, "a court examines the record and again makes a factual finding regarding the similarly situated requirement"; "[i]f the claimants are similarly situated, the collective action proceeds to trial," but "if they are not, the class is decertified, the claims of the opt-in plaintiffs are dismissed without prejudice, and the class representative[s] may proceed on [their] own claims." *Kalloo,* 908 F.Supp.2d at 346 (citations omitted). If, after discovery, the court finds that the putative class members are in fact not similarly situated, or that only class members who worked in the same branch are similarly situated, then the court may "decertify the class, or divide the class into subgroups." *Realite v. Ark Restaurants Corp.,* 7 F.Supp.2d 303, 308 (S.D.N.Y.1998).

### B. Application of the First–Step Analysis

The undersigned finds that plaintiffs, for the purposes of this first step, have met their minimal burden of showing that the potential ASM class members and plaintiffs are similarly situated. *See Jenkins,* 853 F.Supp.2d at 321.

Plaintiffs have identified several material similarities. First, it is undisputed that, under defendant's wage-and-hour policies, ASMs are not eligible to receive overtime pay if they work more than forty hours per week. *See generally* Mot.; Opp'n; Am. Compl.; Answer to Second Amended Complaint ("Answer"), Feb. 7, 2014, DE [53] ¶¶ 7, 82–83. Second, it is undisputed that ASMs' hours were not tracked or recorded. *See id.* Third, plaintiffs' affiants allege that ASMs typically worked more than forty hours per week, and none of defendant's forty ASM-affiants dispute this assertion. *See* Opp'n Ex. B, Oct. 4, 2013, DE [39].

Fourth, plaintiffs have provided some evidence to show that ASMs across the nation have similar non-managerial duties. Plaintiffs have submitted affidavits from ASMs, who worked in various branches throughout seven states. The affiants allege that they and other ASMs primarily performed non-managerial duties, such as working the teller line, counting money, making phone calls, and doing clerical work. *See* Mot. Ex. E. Plaintiffs also submitted a sample of past ASM job postings from various TD Bank branches, which the Court has reviewed. These ASM job postings—from numerous TD Bank branches in various states, such as Virginia, Maryland, Massachusetts, Florida, New York, New Jersey, and Vermont—are starkly similar. *See* Mot. Ex. G, Aug. 28, 2013, DE [34–7]. For example, a Cypress Creek, Florida TD Bank branch requires ASMs to "[p]rove the vault, [s]tore [r]ecap, drawer management and settlement competency in accordance with Teller Operational Standards." This same requirement is present in at least ten other job postings, including ones from Pennsylvania, Massachusetts, and Virginia. Another branch in Barre, Vermont, requires ASMs to "[p]articipate[ ] in opening and closing Store procedures." This same requirement is also present in at least ten other job postings, including ones from Maryland, New Jersey, and New York. *See generally* Mot. Ex. G. These ASM job postings come from a large number of different states and branches—yet the job requirements are predominantly similar. These similarities tend to suggest that ASMs across the nation are treated uniformly to some degree, and that they have similar job duties and requirements. Taken together, this evidence is enough to satisfy the "modest factual showing" requirement. *See Patton v. Thomson Corp.,* 364 F.Supp.2d 263, 267 (E.D.N.Y.2005) (granting conditional certification based on

similar showing); *cf. Jenkins,* 853 F.Supp.2d at 321, 325 (denying conditional certification because plaintiff failed to provide any "affidavits, depositions, or even hearsay evidence [to show] that he was actually aware of other [employees with the same job title] who also primarily performed non-exempt duties").

Based on the foregoing analysis, the Court finds that plaintiffs have satisfied the minimal burden at the first step of this FLSA collective action: they have made at least a "modest factual showing" to demonstrate that they and the potential ASM class members are similarly situated. *See Jenkins,* 853 F.Supp.2d at 321; *Kalloo,* 908 F.Supp.2d at 346; *Calderon,* 892 F.Supp.2d at 459–60.

Defendant argues that the Court should disregard plaintiffs' thirteen supporting affidavits because they are "cookie-cutter" and "conclusory." However, the affidavits are not as "conclusory" or "cookie-cutter" as the defendant suggests. Though there are several near-identical phrases in the affidavits, there are also distinctions and affiant-specific, work-related details provided. For example, the affiants have specified the dates they worked, have used different phrasing in describing their similar job duties, and have identified the different branch locations in which they worked. *See* Mot. Ex. E.

Defendant also contend that the error identified in certain plaintiffs' affidavits— to wit: instances where the term "Interchange Bank" is used rather than "TD Bank" should undermine plaintiffs' showing. However, analyzed in context, this appears to be a rather minor error given the volume of material submitted on the motion. Moreover, given that TD Bank appears to have acquired Interchange Bank several years ago, and some plaintiffs may actually have been Interchange

employees, the error appears to be understandable.

At the same time, the forty sworn affidavits submitted by defendant—attesting to the fact that ASMs appear to have widely disparate responsibilities—make the conditional-certification decision a closer question. These affidavits tend to show that there are other ASMs in other branches who performed managerial work. However, at this early juncture, the burden upon plaintiffs is extraordinarily low, and the issues need not be conclusively resolved. Plaintiffs need only make a "modest factual showing" that they and the potential ASM class members are similarly situated, and plaintiffs have cleared this hurdle.

After discovery, the "court will conduct a more searching factual inquiry as to whether the class members are truly similarly situated," an inquiry that occurs at the second step of a collective action. *See Jenkins,* 853 F.Supp.2d at 320–21. The Court may very well, at the second step, decertify the class or divide it into subgroups, but such a decision is for another day. *Realite,* 7 F.Supp.2d at 308. For now, the Court finds that the class should be conditionally certified only for notice and discovery purposes. *See Genesis Healthcare,* 133 S.Ct. at 1530.

### C. Proposed Method of Notification

Plaintiffs and defendant have agreed on a proposed method of notification. The parties have also agreed to a forty-five-day notice period. The undersigned has reviewed the proposed notice, consent, and reminder forms, which appear to be in order (other than a required change to the case caption). *See generally* Opp'n; Opp'n Ex. C, Oct. 4, 2013, DE [39–5]. Thus, the Court finds that the proposed method of notification and the proposed forms seem to be reasonable.

Accordingly, plaintiffs are authorized to circulate the agreed-to notice, consent, and reminder forms, *see* Opp'n Ex. C, to all current and former ASMs employed by defendant between February 4, 2010, and the date of this Order.

Plaintiffs have also requested that defendant provide the names, phone numbers, and mailing addresses of potential class members. Defendant has not objected to providing this contact information. *See* Opp'n 3 n. 1. In regard to requests for "names, last known addresses, telephone numbers (both home and mobile), e-mail addresses, and dates of employment," courts "often grant this kind of request in connection with a conditional certification of an FLSA collective action." *Raniere v. Citigroup Inc.*, 827 F.Supp.2d 294, 327 (S.D.N.Y.2011) (internal quotation marks omitted); *see also Vaughan v. Mortg. Source LLC*, 2010 WL 1528521, at *9 (E.D.N.Y. Apr. 14, 2010) ("Courts within the Second Circuit typically grant this type of request when granting a motion for conditional certification of an FLSA collective action").

Accordingly, defendant shall provide to plaintiffs the names, last known mailing addresses, and telephone numbers (both home and mobile, if available) of current and former ASMs who were employed by defendant between February 4, 2010, and the date of this Order. Defendant shall provide this contact information to plaintiffs in a computer-readable data file (*i.e.*, computerized spreadsheet form) within 21 days of this Order. *See, e.g., Vaughan*, 2010 WL 1528521, at *9.

## CONCLUSION

For the foregoing reasons, the Motion is GRANTED. The parties shall engage in the notification process in accordance with this Order.