Ronald **D'ANNA** and All Other
Similarly Situated Persons

v.

**M/A–COM, INC.**

Civ. No. L–94–1399.

United States District Court,
D. Maryland.

Oct. 12, 1995.

Paul W. Spence, and Richard P. Neuworth, Baltimore, Maryland, for plaintiffs.

Harriet E. Cooperman, and Jody Maier, Baltimore, Maryland, for defendant.

*MEMORANDUM*

LEGG, District Judge.

Before the Court is D'Anna's Motion to Proceed with Collective Action under 29 U.S.C. § 216(b) ("motion"). The plaintiff, Ronald D'Anna, brings suit pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, and alleges that defendant M/A–COM discriminated against him on the basis of age when he was laid off. D'Anna further alleges that M/A COM, through its Vice President of Sales and Marketing, Peter Manno, discriminatorily discharged other older sales personnel. D'Anna requests this Court (1) to direct the defendant to provide a list of names and last known addresses of all persons similarly situated to the plaintiff; (2) to approve as to both form and content the notice of pendency of action and "consent to join" form appended to the motion; (3) to authorize counsel for the plaintiff to circulate the notice of pendency to all potential opt-in parties; and (4)

to establish a bar date cutting off the right of an opt-in party to join this collective action.

The Court has reviewed the papers submitted and in a separate order shall deny plaintiff's motion.

## I.  BACKGROUND

In 1993, plaintiff D'Anna was laid off from his job as a field sales engineer for M/A–COM in the Mid–Atlantic Regional Sales office, which is located in M/A–COM's Eastern Area. D'Anna alleges that Peter Manno, Vice President of Sales and Marketing, and other M/A–COM officials terminated sales personnel within the protected age group with discriminatory intent, in violation of the ADEA. M/A–COM defends the decision to lay off D'Anna, claiming that Ronald Atwater, the Director of Sales for the Eastern Area, made the decision to lay off D'Anna based solely upon D'Anna's performance and the need to cut the payroll.

On March 17, 1994, D'Anna filed a charge of age discrimination with the EEOC. On May 25, 1994, D'Anna filed suit in this Court. On June 15, 1994, D'Anna amended his EEOC charge to include claims of class discrimination. On July 21, 1994, the EEOC closed D'Anna's case file.

## II.  D'ANNA FILED TIMELY CLASS ACTION CHARGE WITH THE EEOC

▮ A charge alleging unlawful discrimination must be filed with the Equal Employment Opportunity Commission (EEOC) at least sixty days before an individual may file a complaint in court for age discrimination under the ADEA. 29 U.S.C. § 626(d). "[A]n administrative charge must allege class-wide age discrimination or claim to represent a class in order to serve as the basis for an ADEA class action under [29 U.S.C. § 216(b)]." *Kloos v. Carter–Day Co.,* 799 F.2d 397, 400 (8th Cir.1986); *accord Naton v. Bank of California,* 649 F.2d 691, 697 (9th Cir.1981); *see Foit v. Suburban Bancorp,* 549 F.Supp. 264, 266 (D.Md.1982).

It is undisputed that D'Anna's initial charge, filed with the EEOC on March 17, 1994, alleged strictly individual claims of age

discrimination. On May 25, 1994, D'Anna filed a class action in this Court alleging age discrimination. On June 15, 1994, D'Anna amended his initial charge before the EEOC to include claims of class-wide discrimination. Pursuant to the EEOC's regulations, "[a] charge may be amended . . . to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." 29 C.F.R. 1601.12(b); see Balazs v. Liebenthal, 32 F.3d 151, 157 (4th Cir.1994) (applying regulation in Title VII case).

■ D'Anna's amended charge, alleging class-wide age discrimination in terminations, relates to his initially filed claim of age discrimination in his lay off, and therefore, pursuant to 29 C.F.R. 1601.12(b), relates back to the date of the initial charge filed on March 17, 1994. Thus, the requirement of filing a charge alleging class-wide claims at least sixty days prior to filing suit has been met by the plaintiffs in this case.

Defendant contends that the relation back provision does not apply in this case because the class action suit in federal court had been filed prior to the filing of the amended administrative charge. To support this argument, defendant relies upon the Fourth Circuit's recent opinion in Balazs. Defendant's reliance is misguided, however, because Balazs is factually, and consequently legally, distinct.

In Balazs, the Fourth Circuit held that a Title VII charge may be amended and relate back, pursuant to 29 C.F.R. § 1601.12(b), "only so long as the charge is a viable one in the EEOC's files, but that where, as here, a right to sue letter has issued, a suit has been instituted and the EEOC has closed its file, there is no longer a charge pending before the EEOC that is capable of being amended." Balazs, 32 F.3d at 157. The Balazs

court emphasized that the plaintiff attempted to amend his complaint four months after the EEOC file had closed, the EEOC declined to amend the closed file, and the EEOC opened a new file and assigned the additional charge a new case number.

■ In contrast to Balazs, D'Anna's EEOC case remained open and viable when he filed his amendment.[1] The EEOC accepted the amended charge and requested a response from the defendant. When defendant failed to respond within five weeks, the agency closed its file. Because the charge before the EEOC remained viable at the time of the amendment, plaintiff's amendment satisfied the requirements of 29 C.F.R. § 1601.12(b) as interpreted by the Fourth Circuit in Balazs. The class claims relate back to the date of the original charge, thereby satisfying the administrative charge prerequisites to the suit filed in this Court.

## III. NO CLASS OF "SIMILARLY SITUATED" POTENTIAL PLAINTIFFS EXISTS

■ Under the ADEA, plaintiffs may maintain a class action for age discrimination pursuant to 29 U.S.C. § 216(b), a provision of the Fair Labor Standards Act which is incorporated into the ADEA.[2] 29 U.S.C. § 626(b). Specifically,

An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). This provision establishes an "opt-in" scheme, in which plaintiffs must affirmatively notify the court of their intentions to be a party to the suit.

---

1. Unlike Title VII, the ADEA does not require the EEOC to issue a right-to-sue prior to the institution of a private suit. An ADEA plaintiff must only wait sixty days, and then may file suit regardless of whether the EEOC has completed its investigation of the matter.

2. An ADEA class action is governed by this provision of the Fair Labor Standards Act and is not subject to the requirements of a class action set forth in Fed.R.Civ.P. 23. See, e.g., LaChapelle v. Owens–Illinois, Inc., 513 F.2d 286, 289 (5th Cir. 1975).

■ In *Hoffmann–LaRoche, Inc. v. Sperling*, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989), the Supreme Court resolved a circuit split and held that "district courts have discretion, in appropriate cases, to ... facilitat[e] notice to potential plaintiffs" in ADEA class actions. *Sperling*, 493 U.S. at 169, 110 S.Ct. at 486. By statute, a class action under the ADEA cannot be maintained unless the plaintiffs are "similarly situated." 29 U.S.C. §§ 626(b), 216(b). Although the Court need not reach a conclusive determination whether a class of "similarly situated" plaintiffs exists at the notice stage, there must be, at a minimum, evidence of such a potential class "sufficiently developed at this time to allow court-facilitated class notice." *Sperling v. Hoffman–LaRoche, Inc.*, 118 F.R.D. 392, 406 (D.N.J.), *aff'd in part and dismissed in part*, 862 F.2d 439 (3d Cir.1988), *aff'd,* 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989); *accord Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 267 (D.Minn.1991); *Church v. Consolidated Freightways, Inc.*, 137 F.R.D. 294, 303–04 (N.D.Cal.1991).

In reviewing and summarizing the case law defining "similarly situated," the district court in *Sperling* concluded that "courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." *Sperling*, 118 F.R.D. at 407 (citing cases).[3]

The courts have uniformly recognized that only a preliminary finding of "similarly situated" potential plaintiffs is necessary to authorize notice to potential class members; nevertheless, they have differed on the appropriate degree of factual support for class allegations prior to authorization of notice. *See Severtson*, 137 F.R.D. at 266 (citing cases). Although court-authorized notice has been issued based solely upon allegations of class-wide discrimination in a complaint, *see Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 442–45 (N.D.Ill.1982), many courts have required some factual support for the allegations prior to authorization of notice. *See, e.g., Schwed v. General Elec. Co.*, 159 F.R.D. 373, 375–76 (N.D.N.Y.1995); *Severtson*, 137 F.R.D. at 266; *Sperling*, 118 F.R.D. at 406.

■ This Court concludes that the better reasoned cases require the plaintiff to make

---

**3.** The district court in *Sperling* extensively cited cases reflecting courts' applications of the "similarly situated" standard:

See the fact situations at issue in *Bean [v. Crocker National Bank]*, 600 F.2d [754] at 756 [9th Cir.1979] (RIF [reduction in force] implemented over 4 months); *Owens [v. Bethlehem Mines Corp.]*, 108 F.R.D. [207] at 208–09 [S.D.W.Va.1985] (consolidation of two corporate divisions led to a RIF which at least 10 employees complained of as discriminatory); *Allen [v. Marshall Field & Co.]*, 93 F.R.D. [438] at 443 [N.D.Ill.1982] ("campaign" of discrimination by top management over five years); *Franci [v. Avco Corp.]*, 538 F.Supp. [250] at 252 [D.Conn.1982] ("massive" RIF executed over 3 years); *Plummer [v. General Elec. Co.]*, 93 F.R.D. [311] at 312 [E.D.Pa.1981] (class members shared same company department, "similar" complaints of discrimination, and same requests for relief); *Sussman [v. Vornado, Inc.]*, 90 F.R.D. [680] at 682, 684 [D.N.J.1981] ("undisputed facts" showed that class members were forced out of company between 1976 promise of pension participation and effective date of their participation in 1977); *Locascio [v. Teletype Corp.]*, 74 F.R.D. [108] at 112 [N.D.Ill.1977] (one large layoff on or about July 11, 1975); *Burgett [v. Cudahy Co.]*, 361 F.Supp. [617] at 622 [D.Kan.1973] (all class members were (1) 60–65 years old, (2) long-time supervisory personnel, (3) fired and rehired at same time, for same reasons, (4) complaining of same injurious behavior, (5) seeking same relief).

*Sperling*, 118 F.R.D. at 407. For additional applications of the "similarly situated" requirement, see *Schwed v. General Elec. Co.*, 159 F.R.D. 373, 376 (N.D.N.Y.1995) (finding plaintiffs similarly situated when plaintiffs submitted several affidavits describing a ranking system used to determine who was fired in a reduction in force); *Ulvin v. Northwestern Nat'l Life Ins. Co.*, 141 F.R.D. 130, 131 (D.Minn.1991) (finding plaintiffs not similarly situated when company implemented decentralized reduction plan); *Church*, 137 F.R.D. at 303–04 (finding factual support for plan of discrimination in a document reflecting company cost-savings from terminations of employees, in combination with allegations of a "preconceived plan"); *Walker v. Mountain States Tel. and Tel. Co.*, 112 F.R.D. 44, 47 (D.Colo.1986) (limiting class to those retiring under the same Supplemental Income Pension Plan); *Palmer v. Reader's Digest Ass'n*, 1986 WL 11458, 42 Fair Empl.Prac.Cas. (BNA) 212, 214 (S.D.N.Y.1986) (holding that there needs to be "some identifiable nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged discrimination," finding one-year restructuring process to be such a nexus).

a preliminary factual showing that a similarly situated group of potential plaintiffs exists. The rationale of the *Severtson* court is persuasive: "As a matter of sound case management, a court should, before offering [to assist plaintiff in locating additional plaintiffs], make a preliminary inquiry as to whether a manageable class exists.... The courts, as well as practicing attorneys, have a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation." *Severtson*, 137 F.R.D. at 266–67. Furthermore, an employer should not be unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense.

In his complaint, D'Anna's allegations of class-wide age discrimination are both broad and vague. D'Anna claims that Peter Manno, Vice President of Sales and Marketing, terminated him on the basis of age and that his job duties were given to a younger person. (Complaint at ¶ 11.) He further alleges that Manno and unnamed "others" acting within the scope of their employment for M/A–COM terminated "several other sales engineers and other sales personnel over the age of 40." (Complaint at ¶ 13.) Finally, D'Anna asserts that "[p]laintiff D'Anna's discharge and all other discharges mentioned in the Complaint were motivated by Defendant's intent to discriminate against Plaintiff D'Anna and other sales personnel on the basis of age." (Complaint at ¶ 14.)

Plaintiff provides meager factual support for these vague allegations. As the plaintiff points out, Manno admits participation in the termination of four employees within the protected age group (including D'Anna) who were employed in the Eastern Area Field Sales Division. (Plaintiff's Reply to Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Proceed with Collective Action under 29 U.S.C. § 216(b) ("Reply"), at Exhibit J, K.) Plaintiff's Motion to Compel additionally lists seven older employees who were allegedly terminated during Manno's tenure.[4]

Based upon the foregoing, plaintiff seeks court-authorized notice to a globally distributed class. Specifically, D'Anna proposes a class consisting of individuals who were, at any time after February 5, 1992,[5] (1) over the age of 40; (2) employed by M/A–COM, Inc. in the Field Sales Division in any of its offices; and (3) involuntarily discharged, laid off, forced to retire or resign, or terminated from employment by M/A–COM.

Although the requirements for court-authorized notice in ADEA class actions are not stringent, the plaintiff has failed to make the relatively modest factual showing required in *Schwed, Severtson,* and the *Sperling.* The plaintiff has not pointed to any company plan or policy to target older employees for termination. Plaintiff has done nothing more than identify eleven individuals who are over forty years of age and who may have been terminated during Manno's tenure. The mere listing of names, without more, is insufficient absent a factual showing that the potential plaintiffs are "similarly situated." The plaintiff has the burden of demonstrating that notice is "appropriate." *Frank v. Capital Cities Communications, Inc.,* 88 F.R.D. 674, 678 (S.D.N.Y.), *amended by* 509 F.Supp. 1352 (S.D.N.Y.1981). In this case, plaintiff has not met this burden.

## IV. CONCLUSION

Accordingly, the Court shall, by separate order, deny plaintiff's Motion to Proceed with Collective Action under 29 U.S.C. § 216(b). The denial of plaintiff's motion is without prejudice. The Court will allow broad discovery. Plaintiff is free to file a new motion to proceed with collective action following such discovery if plaintiff can establish that class treatment is warranted at that time.

---

4. Plaintiff also claims that older employees were underrepresented in the workforce. As of December 31, 1993, only three of fourteen field sales engineer positions in the Eastern Area were held by individuals over forty. (Reply, at Exhibit K.)

5. Peter Manno became Vice President of Sales and Marketing on February 5, 1992.