**516**

Mary CAMPER, et al.,

v.

HOME QUALITY MANAGEMENT INC.

CIV. No. CCB–99–2630.

United States District Court,
D. Maryland.

Sept. 21, 2000.

Carey R. Butsavage, Butsavage & Associates, P.C., Washington, DC, for plaintiffs.

Patrick John Stewart, Kollman & Sheehan, P.A., Baltimore, MD, for Defendant.

Mark Reynolds, Butsavage & Associates, P.C., Washington, DC, for Gail Matilda Gantt, Mary Holly, Charles Remied, Jr., Wilhelmina S. McGarity, James Evans, Veronica

Angela McClary, Shawn Latria Gantt and Vivian Houle Demko, interested parties.

## *MEMORANDUM*

BLAKE, District Judge.

Plaintiffs Mary Camper, Susan O'Brien, Thomasina Woodland, Cynthia Berry, Pamela Roach, Patricia Butler, Sharon Hebb, Bridget Dickerson, Annamarie Mimay, Agnes Price, and Barbara Courtney ("Plaintiffs"), on behalf of themselves and those similarly situated, have sued their current or former employer, Defendant Home Quality Management, Inc. ("HQM"), alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, as amended, and the Maryland Wage Payment and Collection Law, Md.Code Ann., Lab & Empl. §§ 3–501-09, and breach of contract. HQM has filed a motion for sanctions based on the alleged failure of several of the plaintiffs to appear for their depositions. The plaintiffs have filed a motion for court facilitated notice to similarly situated employees. Both motions have been fully briefed and no hearing is deemed necessary. *See* Local Rule 105.6. For the reasons articulated below, the defendant's motion for sanctions will be denied; the plaintiffs' motion for court facilitated notice to similarly situated employees will be granted in part.

## *BACKGROUND*

Defendant HQM manages 47 nursing home facilities, all of which are engaged in caring for the elderly. (Plfs.' Mem. Supp. Mot. Court Fac. Not., Patricia Wheeler Dep. at 11–12). Several of the facilities, and 400 of the company's 1700 employees, are located in Maryland. (Def.'s Opp'n at 1, 2). HQM's payroll policies are promulgated by corporate headquarters and checks are issued through the corporate payroll department. (Plfs.' Mem. Supp. Mot. Court Fac. Not., Wheeler Dep. at 12; Chiara O'Connor Dep. at 14).

All HQM hourly employees are required to punch a time clock at the beginning and end of their assigned work shift. (Def.'s Opp'n at

3). According to HQM policy, all hourly employees must obtain supervisory approval to clock in more than seven minutes before their scheduled start time and to clock out later than their scheduled quitting time. (Plfs.' Mem. Supp. Mot. Court Fac. Not., Ex. 2). Additionally, HQM automatically deducts a one half-hour unpaid meal break from those employees who are scheduled to work six hours or more. (*Id.*, Deborah McNeal Dep. at 36). If for some reason an employee is unable to take the meal break or part of it, the employee may complete a form and request to be compensated for the time. (Def.'s Opp'n Ex. 3).[1]

On paydays, all hourly employees are issued a paycheck along with a time sheet which shows the hours they worked each day during that pay period. If an employee has any reason to believe that she was not compensated for all time worked in the pay period, she may request the Human Resources Director and/or the Administrator of the nursing home to make an adjustment. (*Id.*, Hebb Dep. at 21–23; Berry Dep. at 56).

Plaintiffs allege that they sometimes worked through their lunch breaks and were not compensated for that time. Plaintiff Sharon Hebb testified that this occurred to her about two or three times per week. (*Id.*, Hebb Dep. at 25). Cynthia Berry testified that over a certain period of time, she worked through her lunch break approximately three times per week. (Plfs.' Motion, Berry Dep. at 42–44). She also alleges that because of the heavy workload, she worked before clocking in. (*Id.*, Berry Dep. at 35).

## *ANALYSIS*

### I. Motion for Sanctions

Federal Rule of Civil Procedure 37(d) allows the court to sanction parties who fail "to appear before the officer who is to take the deposition after being served with proper notice . . . ." These sanctions, outlined at Rule 37(b)(2)(A)-(C), become progressively more severe, ranging from an order establishing certain facts to the entry of a default

---

1. The defendant submitted forms showing only that employees' pay was adjusted when they had forgotten to clock in or out on time. It submit-

ted no examples indicating that employees were compensated for missed lunch breaks. (Def.'s Opp'n Ex. 3).

judgment. HQM has requested that the court impose one of the most severe sanctions—dismissal of their action—upon those plaintiffs who allegedly failed to appear for their depositions. *See* Fed.R.Civ.P. 37(b)(2)(C)(permitting the court to enter an order "dismissing the action or proceeding or any part thereof" as a sanction for failure to comply with discovery).

■■■ Federal district courts possess great discretion to sanction parties for failure to obey discovery orders. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45, 111 S.Ct. 2123, 2132–33, 115 L.Ed.2d 27 (1991) ("A primary aspect of th[eir] discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process.") This discretion diminishes, however, when the requested relief involves a default judgment. *See Mutual Fed. Sav. and Loan v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir.1989) ("When the sanction involved is judgment by default, the district court's 'range of discretion is more narrow' because the district court's desire to enforce its discovery orders is confronted head-on by the party's rights to a trial by jury and a fair day in court." (citation omitted)). When considering dismissal as a discovery sanction, courts apply a four part test, known as the "Wilson factors": (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice the noncompliance has caused the other party; (3) the need to deter the particular type of noncompliance; and (4) the effectiveness of less drastic sanctions. *Id.* (citing *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503–05 (4th Cir.1977)). This analysis is designed to "insure that only the most flagrant case, where the party's noncompliance represents bad faith and callous disregard for the authority of the district court and the Rules, will result in the extreme sanction of dismissal or judgment by default." *Id.* (citation omitted).

HQM cites several cases in which the court has used its discretion to dismiss an action as a consequence to parties who failed to appear for their own depositions. In most of those cases, however, the dismissal followed a pattern of dilatory behavior. *See, e.g., Carter v. Prince George's County*, 155 F.R.D. 128, 130

(D.Md.1994) (dismissing plaintiff's complaint without prejudice after she failed to attend two properly noticed depositions, supplement her discovery regarding interrogatories and documents, and pay her experts so that they would appear at deposition); *Ham v. United States*, 1989 WL 46784, *2 (D.Md. Apr.24, 1989) (dismissing plaintiff's complaint after he failed to appear at four depositions); *see also Hyde & Drath v. Baker*, 24 F.3d 1162, 1166–67 (9th Cir.1994) (affirming dismissal of complaint where plaintiffs' delay resulted in a two and a half year delay in discovery); *Gordon v. New England Tractor Trailer Training Sch.*, 168 F.R.D. 178, 181 (D.Md. 1996) (fining plaintiff for failure to appear at two scheduled depositions); *Viswanathan v. Scotland County Bd. of Educ.*, 165 F.R.D. 50, 53–54 (M.D.N.C.1995), *aff'd by* 76 F.3d 377, 1996 WL 36916 (4th Cir. Jan 31, 1996), (dismissing complaint after plaintiff failed to appear for her third deposition and less severe sanctions had no appreciable effect on her intransigence).

■■ Additionally, the Fourth Circuit has more recently emphasized the importance of warning a party prior to dismissing its claim as a discovery sanction. *See Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 40 (4th Cir.1995) ("[T]his court has emphasized the significance of warning a defendant about the possibility of default before entering such a harsh sanction."); *Choice Hotels Int'l v. Goodwin and Boone*, 11 F.3d 469, 471 (4th Cir.1993) ("The plaintiff is entitled to be made aware of this drastic consequence of failing to meet the court's conditions at the time the conditions are imposed, when he still has the opportunity to satisfy the conditions and avoid it."); *Sadler v. Dimensions Health Corp.*, 178 F.R.D. 56, 59 (D.Md.1998) (noting that the Fourth Circuit requires that "district courts must precede dismissal with an 'explicit and clear' threat to a party that failure to meet certain conditions could result in dismissal of the party's case with prejudice") (citations omitted).

Although HQM requests the dismissal without prejudice of nine plaintiffs whom it alleges failed to attend their scheduled depositions, the letters exchanged between the attorneys indicate that only four of the plain-

tiffs were scheduled to appear that day. (Plfs.' Opp'n, Ex. 3, 4). Of the four, three, Mary Camper, Susan O'Brien, and Barbara Courtney, did not attend the depositions.[2] HQM's motion, therefore, applies only to those three plaintiffs.

HQM's request for dismissal as to Mary Camper, Susan O'Brien, and Barbara Courtney will be denied for two reasons. First, the plaintiffs had no notice or warning that failure to appear might result in dismissal of their action. As discussed above, the Fourth Circuit favors such pre-dismissal warnings. *See, e.g., Hathcock,* 53 F.3d at 40; *Choice Hotels,* 11 F.3d at 471; *Sadler,* 178 F.R.D. at 59. Second, this case is easily distinguished from those in which dismissal was appropriate in light of repeated failures to appear and numerous refusals to comply with discovery requests. *See Carter,* 155 F.R.D. at 130; *Ham,* 1989 WL 46784 at *1. There is no such repeated malfeasance here. This is the first occasion on which each of these three plaintiffs have failed to appear for a deposition. While undoubtedly vexing to HQM and its attorneys, this one act is neither severe or pervasive enough to warrant dismissal. Further, Plaintiffs' counsel has proffered explanations for the difficulty in scheduling depositions and transporting the plaintiffs to Baltimore.

Accordingly, HQM's motion for sanctions will be denied. The plaintiffs are on notice, however, that further refusal to comply with discovery deadlines may result in dismissal.

## II. Motion for Court Facilitated Notice to Similarly Situated Employees

Plaintiffs have filed this suit for unpaid wages, overtime pay, and liquidated damages pursuant to the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201 *et seq.,* on behalf of the named plaintiffs and others similarly situated. They also have filed a

motion pursuant to § 216(b)[3] for court facilitated notice to similarly situated employees and former employees of HQM. Section 216(b) establishes an "opt-in" scheme whereby potential plaintiffs must affirmatively notify the court of their intention to become a party to the suit. HQM opposes this motion, arguing that the plaintiffs have not alleged a violation of the FLSA, and accordingly, are not entitled to court facilitated notice. For the reasons articulated below, the motion for court facilitated notice will be granted as to HQM's Bayside facility only.

In *Hoffmann–La Roche, Inc. v. Sperling,* the Supreme Court held that "district courts have discretion, in appropriate cases, to ... facilitat[e] notice to potential plaintiffs." 493 U.S. 165, 169, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989) (resolving a circuit split as to the application of § 216(b) in cases brought under the ADEA). The relevant inquiry then is not whether the court has discretion to facilitate notice, but whether this is an appropriate case in which to exercise that discretion. *See Hoffmann v. Sbarro,* 982 F.Supp. 249, 261 (S.D.N.Y.1997).

The threshold issue in determining whether to exercise this discretion is whether the plaintiffs have demonstrated that potential class members are "similarly situated." 29 U.S.C. § 216(b). While courts employ different standards to determine whether plaintiffs have made a sufficient showing to warrant court facilitated notice, I agree with the conclusion of Judge Legg in this District that a plaintiff should be required "to make a preliminary factual showing that a similarly situated group of potential plaintiffs exists" before court assistance is granted. *D'Anna v. M/A–COM, Inc.,* 903 F.Supp. 889, 893–94 (D.Md.1995). Mere allegations in the complaint are not sufficient; some factual showing by affidavit or otherwise must be made. *See, e.g., Sperling v. Hoffman–LaRoche, Inc.,*

---

2. Cynthia Berry attended her deposition. Her sister, Plaintiff Sharon Hebb, though not scheduled, was able to be deposed, because she accompanied Ms. Berry to the deposition.

3. That section provides:
   An action ... may be maintained against any employer ... in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.
   29 U.S.C. § 216(b).

118 F.R.D. 392, 406–07 (D.N.J.1988) (holding that evidence of "similarly situated" plaintiffs must be "sufficiently developed" to allow court facilitated class notice), *aff'd in part, dismissed in part,* 862 F.2d 439 (3d Cir. 1988), *aff'd,* 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989); *accord Severtson v. Phillips Beverage Co.,* 137 F.R.D. 264, 266 (D.Minn.1991) ("As a matter of sound case management, a court should, before offering such assistance, make a preliminary inquiry as to whether a manageable class exists ... [P]laintiffs must submit evidence establishing at least a colorable basis for their claim that a class of 'similarly situated' plaintiffs exist"). In *D'Anna,* Judge Legg denied the plaintiff's request for court facilitated notice because the plaintiff provided "meager factual support for [his] vague allegations." *D'Anna,* 903 F.Supp. at 894. *See also H & R Block, Ltd. v. Housden,* 186 F.R.D. 399, 400 (E.D.Tex.1999) (denying request for court facilitated notice because the only evidence of similarly situated class members was conclusory affidavits stating the individuals' beliefs that others had been subjected to similar discrimination).

■ In this case, the plaintiffs have established that HQM has a policy of automatically deducting a 30–minute unpaid daily lunch break from the pay of all hourly employees who work at least six hours a day. This policy is intended to be implemented company-wide. (Plfs.' Mem. Supp. Mot. Court Fac. Not., O'Connor Dep. at 9). Two individual plaintiffs have alleged in sworn deposition testimony that one half-hour has been deducted from their time sheet even on those days on which they worked through their scheduled meal break. (*Id.* Hebb Dep. at 24–25; Berry Dep. at 43–44).

HQM also has a company-wide policy whereby employees may not punch in more than seven minutes prior to their scheduled start time or punch out after their scheduled end time without prior supervisory approval. (*Id.,* Ex. 2). Ms. Berry testified in her deposition that she was not paid for work she performed prior to her allowed clocking-in time. (*Id.,* Berry Dep. at 35).

HQM correctly contends that, in order to establish an FLSA violation, the plaintiffs must show actual or constructive knowledge on the part of the employer that its employees are working off the clock. *Bailey v. County of Georgetown,* 94 F.3d 152, 157 (4th Cir.1996). Ms. Hebb and Ms. Berry testified that supervisors were aware of their unpaid work, (Plf.s' Reply at 7, quoting Hebb Dep. at 30–31; Berry Dep. at 45), which apparently resulted from a shortage of staff and a surplus of patients at the Bayside facility. The plaintiffs also submitted Declarations from Annamarie Mimay and Thomasina Woodland, one former and one current employee of Bayside, supporting the claim that they performed unpaid work. Ms. Mimay specifically alleged that her supervisors were aware she did not always get to take a lunch break. (Plfs.' Motion, Declaration of A. Mimay at ¶ 4).

Based on the above testimony, the plaintiffs have advanced a sufficient preliminary factual showing that "potential plaintiffs were subjected to a common ... scheme." *Jackson v. New York Telephone Co.,* 163 F.R.D. 429, 432 (S.D.N.Y.1995). In *Jackson,* the court held that court facilitated notice was appropriate when the plaintiffs made "ample allegations" regarding a company wide policy of discriminating against older workers. *Id.* at 432. *See also Realite v. Ark Restaurants Corp.,* 7 F.Supp.2d 303, 307–08 (S.D.N.Y. 1998) (holding that ten affidavits submitted by plaintiffs alleging failures to pay overtime or use time clocks or sign-in sheets constituted a sufficient factual showing to warrant court facilitated notice); *Severtson,* 141 F.R.D. at 279–280. Factual disputes do not negate the appropriateness of court facilitated notice. *See Realite,* 7 F.Supp.2d at 307; *Severtson,* 141 F.R.D. at 280 ("The fact that these allegations are disputed by defendants does not mean that plaintiffs have failed to establish a colorable basis for their claim that a class of similarly situated plaintiffs exists.").

While the plaintiffs have preliminarily established the existence of a company-wide policy regarding the use of time clocks, their factual showing of uncompensated work known to HQM supervisors is limited to the Bayside facility. Accordingly, notice is war-

ranted only to other HQM employees or former employees at the Bayside facility.

A separate Order follows.

## ORDER

For the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that:

1. Defendants's Motion for Sanctions is **Denied**;

2. Plaintiffs' Motion for Court Facilitated Notice to all potential opt-in FLSA class members is **Granted as to the Bayside facility only.** Counsel shall consult and attempt to agree on a method and form of notice. A status report is due **October 23, 2000.**

3. The pretrial conference and trial dates of October 27, 2000 and November 6, 2000 are hereby **Cancelled.**

4. Copies of this Order and the accompanying Memorandum shall be mailed to counsel of record.