Anibal **MELENDEZ CINTRON,** et al, Plaintiffs,

v.

**HERSHEY PUERTO RICO, INC, Defendants.**

Civil No.: 04–1651(DRD).

United States District Court, D. Puerto Rico.

March 18, 2005.

Celina Romany–Siaca, Celina Romany Law Office Westerbank, Rafael M. Arrillaga–Romany, Rafael M. Arrillaga Law Office, San Juan, PR, for Plaintiffs.

Carl E. Schuster, Lourdes C. Hernandez–Venegas, Schuster Usera & Aguilo LLP, San Juan, PR, for Defendants.

### *OPINION AND ORDER*

DOMINGUEZ, District Judge.

Pending before the Court are Plaintiffs' first, second, third, and fourth *Motions Informing the Honorable Court of Individuals Who Have "Opted In" to the Complaint and Requesting Joinder.* (Docket Nos. 8, 10, 11, and 24 respectively). Defendant, opposing Plaintiffs' request for joinder, filed a *Motion to Strike Plaintiffs' Informative Motions Regarding Opt–In and Joinder, and Requesting Deadline to File Written Consents to Opt–In.* (Docket

No. 12). Subsequently, Defendant also filed a *Motion Requesting Sanctions Under Rule 11* for Plaintiffs' counsel's alleged insistence on advocating claims against defendant that were obtained in an impermissible way—through solicitous letters. (Docket No. 32).

## I. BACKGROUND & PROCEDURAL HISTORY

On June 29, 2004, Plaintiffs brought forth a two count complaint against Defendant Hershey Puerto Rico, Inc. ("Hershey") on behalf of themselves and all other similarly situated workers. *Complaint for Damages, Declaratory Judgment and Injunctive Relief,* Docket No. 1 at 1. They allege that Hershey violated their rights under the Fair Labor Standards Act of 1983, 29 U.S.C. §§ 207, and 214(b) ("FLSA"). They sustain that Hershey engaged in willful conduct to violate their rights under the FLSA by refusing to pay them for the varying time periods that Plaintiffs spent outfitting themselves in and out of protective clothing that Hershey required workers to wear while working in its factory. According to Plaintiffs, this period was in excess of the typical eight hour workday and led to hours worked above the forty hour work week under the FLSA. See *Complaint* at 1–2. Plaintiffs also request relief for the willful depravation of overtime pay under the State Labor Provisions, 29 P.R. Laws Ann. § 274 (2001) ("PR–FLSA"). *Id.* at 7. Finally, Plaintiffs claim that there are other workers similarly situated estimated at 100 and, thus, Plaintiffs come forth as the representatives of the affected class.

On August 24, 2004, Hershey answered the complaint and, further averring as its affirmative defenses the following: 1) failure to state a claim upon which relief can be granted; 2) claims are time-barred; 3) estoppel; 4) unjust enrichment; 5) defen-

dant compensated plaintiffs for all work and time for which Hershey was required; 6) amounts are grossly exaggerated and not in accordance with applicable law; 7) laches; 8) unclean hands; 9) failure to exhaust administrative remedies; 10) compensation; 11) accord and satisfaction; 12) clothes changing and hand washing are not work, thus not compensable; 13) clothes changing and hand washing are preliminary or post-liminary activities; 14) claim preclusion and/or *res judicata;* 15) issue preclusion; and 16) federal wage and hour regulations that permit the "rounding practice" are applicable. See *Answer to the Complaint,* Docket No. 9 at 5–6.

Subsequently, on August 19, 2004, Plaintiffs filed their *Motion Informing the Honorable Court of Individuals Who Have "Opted In" to the Complaint and Requesting Joinder.* (Docket No. 8). In their request, Plaintiffs, as representatives of the alleged affected class, seek to have this Court join forty eight (48) workers that had opted-in to the litigation under that provided under Section 216(b) of the FLSA. Not a single consent form for any of the forty eight (48) workers accompanied the request. On September 2, 2004, Plaintiffs again solicited the joinder of twenty seven (27) other workers who also opted-in. Consent forms were again lacking. (Docket No. 10). Barely a week later, on September 9, 2004, Plaintiffs filed their third motion to join 17 more workers who opted-in. No consent forms accompanied the third motion. (Docket No. 11). Almost two months later, on October 29, 2004, Plaintiffs once more requested the joinder of four (4) workers who opted-in. This time, Plaintiff provided for those four (4) workers' consent forms. (Docket No. 24). It must be noted that Plaintiffs eventually filed with the Court on October 12, 2004 the consent forms for most of the workers they had requested be joined and consent forms for workers that were not

listed in any of the requests for joinder. (Docket No. 14).[1]

Before Plaintiffs filed their fourth request for joinder, Hershey requested the Court to strike Plaintiffs' motion regarding the opt-ins and their joinder. Hershey also petitioned the Court to assign a deadline to file all written consents to opt-in. (Docket No. 12). In their motion to strike, Hershey sustains that a typewritten list with the names of the potential plaintiffs without their signed consent forms fails under the requirements of the FLSA. Notwithstanding, after Plaintiffs filed the signed consent forms, and a series of oppositions, replies, and sur-replies were filed (Dockets No. 14, 22, and 30, respectively), Hershey moved for all of the opt-ins to be stricken. It argued that Plaintiffs were required under Section 16 of the FLSA, *supra*, to file the written consents with the original complaint so that the action may be deemed properly commenced. Furthermore, Hershey avers that the notice Plaintiffs provided to other employees had to have been approved by the Court in order for it to not have been as misleading as they contend it to be. Hershey also alleges that Plaintiffs' counsel was impermissibly solicitous, and thus, is susceptible to overreaching and unduly influences prospective clients for which sanctions are warranted. Finally, Hershey stresses that, if the Court should find that the notice is not solicitous and that the workers have properly opted in, the Court must deem the action properly commenced on the date in which the written consents were filed—that is October 12, 2005, and October 29, 2005, respectively.

Plaintiffs, on the other hand, argue that, contrary to Hershey's proposition, under the FLSA, the Court does not need to first approve the notice informing the possible party plaintiffs of their right to join the litigation. Also, the PR–FLSA does not require them to file consent forms as is Hershey's contention. Moreover, they argue that, since the PR–FLSA does not require party plaintiffs to opt-in, it is proper for them to be joined under the supplemental jurisdiction cause of action.[2] Finally, Plaintiffs stress that the statute of limitations has been tolled against Hershey given that the employees have filed under FLSA and PR–FLSA provisions.

## II. APPLICABLE LAW

Under the FLSA, all employers are required to pay time and a half for each hour in excess of forty hours that an employee works. 29 U.S.C. § 207. Accordingly, Section 16(b) of the FLSA allows any employee, in order to vindicate his or her rights, to bring an action on behalf of him

---

1. These consent forms merely read:
 "I _____ (print name), an employee of Hershey Puerto Rico, Inc. hereby consent to become part of the group of Plaintiffs in the above lawsuit.
 Date: _____
 Signature:
 Address: _____
 Telephone: _____"
 (The consent form neither makes reference to facts in the Complaint nor have any factual allegations of "similarity" to the facts of the Complaint.)

2. The Court notes that, even though the Supreme Court of Puerto Rico has not addressed this issue, the Court of Appeals of Puerto Rico, in *Rodriguez Vega v. Syntex (F.P.)*, No. KLCE 2002–00438, 2002 P.R.App. LEXIS 2171 (Puerto Rico Court of Appeals, Oct. 21, 2002), expressly adopted the federal courts' interpretations of Section 16(b) of the FLSA, 29 U.S.C. § 216(b) and Section 7 of the Portal–to–Portal Act, 29 U.S.C. § 251, when applying 29 P.R. Laws Ann. § 282 regarding the moment when an employee becomes a party plaintiff. Accordingly, the "opt-in" or joinder of the potential party plaintiffs under the supplemental jurisdiction cause of action will be governed by the discussion herein regarding Section 16(b) of the FLSA.

or herself and other similarly situated employees. 29 U.S.C. § 216(b). *See also Basch v. Ground Round, Inc.,* 139 F.3d 6, 10 (1st Cir.1998). Section 16(b) is itself modified by the Portal–to–Portal Act of 1947, 29 U.S.C. § 251–62. Because Section 16(b) predicates this type of representative action, FLSA claims are not subject to the usual Rule 23 class action requirements.[3] Rather, Section 16(b) provides what has come to be known as the "opt-in" representative action mechanism for joining claims and plaintiffs. Therefore, each employee who wishes to join the action must expressly consent to be a member of the action by filing a written consent to that effect. 29 U.S.C., *supra. See also, Lusardi v. Lechner,* 855 F.2d 1062, 1068 n. 8 (3rd Cir.1988). Furthermore, Section 7 of the Portal–to–Portal Act provides that an opt-in class member's claim for relief under the FLSA does not commence until the date the opt-in member's written consent to join the representative action is filed.

The opt-in representative action created by Section 16(b) is based in the old equity Bill of Peace—the device Chancellors used to join large numbers of parties with common interests. Through this device, the Bill of Peace allowed for common claims to be disposed of efficiently in one single action. This Bill of Peace was the answer to the strict limits the common law subjected parties when they attempted to join in the action. In addition, the opt-out class action mechanism that contemporary courts employ also evolved from the joinder mechanism the Bill of Peace promoted, although it is presently governed by Federal Rule of Civil Procedure 23(b)(3). *See Sperling v. Hoffmann–La Roche, Inc.,* 24 F.3d 463, 468 (3rd Cir.1994); Ellen E. Sward, *Values, Ideology and the Evolution of the Adversary System,* 64 Ind.L.J. 301, 331 (1989).

The timeliness of an opt-in class member's consent to join the representative class when seeking relief pursuant to Section 16(b) is defined by Section 7 of the Portal–to–Portal Act. All opt-in members who seek relief under FLSA must submit their consent before the statute of limitations has run. *See Sperling,* 24 F.3d at 469. This is so as to prevent the unnamed employees from claiming relief at a time where the statute of limitations for their actions would otherwise have become time barred. This restrictive provision of the Act was made necessary due to the virtually unlimited liability generated by the Supreme Court's decision in *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946) where it was established that an employer was responsible for paying an employee from "portal-to-portal"—from the time the employee arrived at work until the time he left *including* the time it took for the employee to get to and from the time clock

---

**3.** It is imperative that parties understand that the opt-in mechanism of Section 16(b) and the opt-out mechanism of Rule 23(b)(3) differ greatly. Under Rule 23(b)(3) a class action judgment is binding on all class members who have not requested exclusion. For which, if a person does not wish to be bound by an order in a Rule 23 class action, he must specifically ask to be excluded. Reasonably, notice to class members under Rule 23 is necessary to afford them their due process. On the other hand, under Section 16(b), an individual must affirmatively opt-in to become a party plaintiff, and the representative class judgment will not be binding on those who choose not to opt-in. Thus, due process considerations do not mandate notice to FLSA class members due to the fact that their rights will not be affected unless they affirmatively opt-in, reason for which the determination of a representative class under Section 16(b) of the FLSA is based on a liberal reading of the pleadings and any affidavits that have been submitted during the initial stages of litigation.

to his actual job site. Congress's fear of the huge damages this could cause given that the FLSA did not speak of a statute of limitation lead to the enactment of the aforementioned Portal–to–Portal Act restricting the claims an employee could make by various means for back wages. Hence, the enactment of a statute of limitations imposing that the action must be commenced within two years after the cause of action accrued; three years if the cause of action arose from a willful violation. 29 U.S.C. § 255.

Despite the fact that the FLSA does create an opt-in mechanism, it is within the district courts' discretion to manage the joinder of parties and notice to parties. Fed.R.Civ.P. 83(b). *See also, Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 170–72, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989); *Kane v. Gage Merch. Services*, 138 F.Supp.2d 212, 214 (D.Mass.2001). Only two circuit courts have confronted whether notice to potential FLSA class members is permitted under Section 16(b). The Ninth Circuit Court, in *Kinney Shoe Corp. v. Vorhes*, 564 F.2d 859 (9th Cir.1977), *overruled by Hoffmann–La Roche, Inc.*, 493 U.S. 165, 110 S.Ct. 482, *supra*, held that courts do not have the power to authorize notice to potential FLSA class members under its Section 16(b).[4] In doing so, the Circuit Court took under consideration the policy against the solicitation of claims that potentially stir up litigation. The Circuit

Court logically remained silent as to how potential members of the class could be made aware as to pending actions in which they may join. *See also Partlow v. Jewish Orphans Home of Southern Cal.*, 645 F.2d 757 (9th Cir.1981).

Contrarily, the Second Circuit Court held that Section 16(b) does not prohibit the courts giving such notice. See *Braunstein v. Eastern Photographic Laboratories, Inc.*, 600 F.2d 335 (2nd Cir.1978) (explaining that "[a]lthough one might read the Act, by deliberate omission, as not providing for notice, we hold that it makes more sense, in light of the "opt-in" provision of § 16(b) of the Act to read the statute as permitting, rather than prohibiting, notice in an appropriate case.") *cert. denied*, 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1046 (1979).

█ Within the First Circuit, although the Circuit Court of Appeals has yet to address the issue, the District Court of Rhode Island has squarely confronted the issue and resolved under a two-tiered approach the provider for certification under Section 16(b) of the FLSA.[5] Thus, under the two-tiered analysis, the trial court must begin by determining whether potential class members should be given notice of the pending action. *See Reeves v. Alliant Techsystems, Inc.*, 77 F.Supp.2d 242, 246 (D.R.I.1999); *Kane v. Gage Merchandising Services, Inc., et al.*, 138 F.Supp.2d 212, 214 (D.Mass.2001). This initial ruling

---

4. Many district courts have rejected *Kinney* and followed the reasoning of the Second Circuit Court in *Braunstein v. Eastern Photographic Laboratories*, 600 F.2d 335 (2nd Cir. 1978). *See Johnson v. American Airlines, Inc.*, 531 F.Supp. 957 (N.D.Tex.1982); *Allen v. Marshall Field & Co.*, 93 F.R.D. 438 (N.D.Ill. 1982); *Monroe v. United Air Lines, Inc.*, 90 F.R.D. 638 (N.D.Ill.1981); *Frank v. Capital Cities Communications, Inc.*, 88 F.R.D. 674 (S.D.N.Y.1981); *Soler v. G. & U., Inc.*, 86 F.R.D. 524 (S.D.N.Y.1980); *Riojas v. Seal Produce, Inc.*, 82 F.R.D. 613 (S.D.Tex.1979).

5. The Court notes that the District Court of Massachusetts, through District Judge Gorton followed an almost identical legal reasoning in *Kane v. Gage Merchandising Services, Inc., et al.*, 138 F.Supp.2d 212 (D.Mass.2001). Thus, this Court is convinced that the reasonable approach to resolving "opt-in" controversies under Section 16(b) of the FLSA is the two-tiered approach set forth by District Judge Lisi in *Reeves v. Alliant Techsystems, Inc.*, 77 F.Supp.2d 242 (D.R.I.1999).

is "usually based only on the pleadings and any affidavits that have been submitted" during the first stages of the case proceedings. *Id., citing Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995). Logically, the court only possesses minimal evidence at this *notice stage* of the proceedings. Accordingly, the determination must be made using a fairly lenient standard which usually results in conditional certification of the representative class. *Id., but see Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887–88 (11th Cir.1983) (holding the district court did not abuse its discretion when it refused to authorize class notice where plaintiff's counsel only offered unsupported assertions of FLSA violations). **Plaintiffs need simply allege that the putative class members were, together, the victims of a single decision, policy, and/or plan that violated the FLSA in order to meet this burden.** *See, Reeves*, 77 F.Supp.2d at 247, *citing Mooney*, 54 F.3d at 1214, *citing*, in turn, *Sperling v. Hoffmann–La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J.1988).

However, although the courts have uniformly maintained that only a preliminary finding of "similarly situated" plaintiffs is necessary to authorize notice to potential class members, all have differed as to the degree of factual support for class allegations in order for the court to provide authorization. *See D'Anna v. M/A–COM, Inc.*, 903 F.Supp. 889, 893 (D.Md.1995); *Vreeland v. Ethan Allen*, 828 F.Supp. 14 (S.D.N.Y.1993); *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266 (D.Minn. 1991). Some have authorized notices based solely upon allegations that an entire class has been affected by the employer's alleged hurtful acts. *Id.* Most, though, have required some **factual support** for the allegations before they authorization of notice. *See D'Anna, supra; Schwed v. General Elec. Co.*, 159 F.R.D. 373, 375–76 (N.D.N.Y.1995); *Severtson*,

137 F.R.D. at 266. The Court is persuaded to follow the latter cited cases.

Notwithstanding, opposing party may, once discovery is completed and the case is trial ready, may file a motion for "decertification". At this stage, the Court invariably has much more information on which to base a final decision regarding certification of the representative class, and can make a determination of fact as to whether all members are truly "similarly situated". *See Reeves*, 77 F.Supp.2d at 247. The District Court of Rhode Island went a step further and concluded that:

> [w]hen determining the scope of the class, most courts focus on the following three factors: (1) the disparate factual and employment settings—e.g., whether plaintiffs were employed in the same corporate department, division, and location; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations.

*Id., see, e.g. Thiessen v. General Elec. Capital Corp.*, 996 F.Supp. 1071, 1081 (D.Kan. 1998); *Brooks v. BellSouth Telecom., Inc.*, 164 F.R.D. 561, 568 (N.D.Ala.1995); *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 (D.N.J.1987). If from the record the court finds that claimants are not similarly situated, the Court may decertify the class by dismissing those claimants not similarly situated without prejudice. Contrarily, if they are found to be similarly situated, then the Court proceeds to trial as a collective action.

Finally, it must be noted that there is nothing in the FLSA or the Portal–to–Portal Act or its case law that alludes to specific requirements concerning the timing or the content of a notice of consent under Section 16(b) other than it must clearly manifest the individual's consent to become a party plaintiff to the litigation.

As the Supreme Court stated in *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 707 n. 18, 65 S.Ct. 895, 89. L.Ed. 1296 (1945), the purpose behind creating the FLSA was to "aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." Thus, to haphazardly prohibit the notice to potential FLSA class members would, in our opinion, infringe the liberal and curative purpose of the Act.

## III. DISCUSSION

 As the Court discussed above, there are no specific requirements concerning the time when a notice of consent should be filed under Section 16(b) of the FLSA. The only requirement that said statute imposes is that they be filed in the court where the action is sought. That is it, nothing more. It is Section 7 of the Portal–to–Portal Act that subjects the commencement of the action to the date of said filing. Thus, the Court finds Hershey's argument that the notices of the ninety eight (98) workers must be stricken from the record because they were not filed along with the original complaint inapposite. Plaintiffs were not obliged to file the forms simultaneously with the complaint when "the FLSA allows one or more employees to pursue an action in a representative capacity for 'other employees similarly situated'." *Reeves,* 77 F.Supp.2d at 246 (*citing Basch v. Ground Round, Inc.,* 139 F.3d 6, 10 (1st Cir.1998)). However, the actual date of the commencement of the action for these potential party plaintiffs, if joinder under the "opt-in" provision were appropriate, would be either October 12, 2004 or October 29, 2004, the date the consent forms were filed in Court. What is more, Hershey's contention that the notice to plaintiffs is void and unenforceable because it is impermissibly solicitous and misleading in its content due to the fact that the Court failed to previously approve fails to find any support in the FLSA or its guiding case law because a complaint already existed filed against respondent company alleging that others were similarly situated. On the contrary, as is with the requirements of the timing of filing the consent forms, there are no specific requirements in the FLSA concerning the content of the notice to consent.[6] Hershey mistakenly confuses *Reeves* and *Kane's* holding that the trial court must **first** decide **whether** the potential class **should receive** notice of the action—that is, whether to authorize class notice—with a misconceived conclusion that the content of the notice itself must be approved by the court and/or that consent forms must be simultaneously presented upon original failing. Taking into consideration *Reeves* and *Kane's* consummate holding that the **trial court must first authorize whether the alleged class should be provided with notice,** we find that the consents to opt-in filed by Plaintiffs in the instant case should be **STRICKEN** from the record. Plaintiffs failed to request authorization from this Court to give notice to the potential class members. Yet, Plaintiffs have provided notice to the potential opt-in class of employees against established case law precedent of district courts in the First Circuit.

██ Moreover, even if Plaintiffs had requested notice authorization, the Court would not have been swayed to grant it.

---

**6.** This conclusion does not mean that there standards are inexistent and that the matter is a "no man's land." At the very least, the standards set forth by the American Bar Association's Rules of Professional Conduct ("the Model Rules") apply. *See* Local Rule 83.5, *see generally, In re Cordova Gonzalez,* 996 F.2d 1334, 1336 (1st Cir.1993).

The more thoroughly reasoned cases regarding the appropriate degree of factual support for class allegations prior to authorization of notice require plaintiffs to provide a preliminary factual showing that there actually exists a similarly situated group of potential party plaintiffs.[7] The Court is persuaded by these cases' reasoning for "[a]s a matter of sound case management, a court should, before offering [to assist plaintiffs in locating additional plaintiffs], make a preliminary inquiry as to whether a manageable class exists[.] The Courts, as well as practicing attorneys, have a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation." *Severtson*, 137 F.R.D. at 266–67. Additionally, a frivolous fishing expedition at the employer's expense is avoided. After a careful, liberal, and lenient review of Plaintiffs' allegations, the Court finds them to be an insufficient basis for this court to authorize as an opt-in class notice at this time. Plaintiffs have done nothing more than identify some ninety eight (98) individuals who, we can only assume, work or worked for Defendant, and the mere listing of names, without anything more, is insufficient to authorize notice absent a factual showing that the potential plaintiffs are "similarly situated".[8] *See D'Anna*, 903 F.Supp. at 894. It is the plaintiff who has the burden to demonstrate that notice is appropriate by showing that putative class members are similarly situated at this stage in the proceedings. *Id.* at 94–95. Plaintiffs have not met this burden. Further, the consent forms provided lack factual background

and are purely conclusive. This Court holds that there has to be a nexus established between the complaint and the consent forms based on averred facts.

■ Finally, Hershey's request for sanctions against Plaintiffs under Rule 11 due to their counsel's insistence on advocating claims against Hershey that were obtained in an impermissible way, through a solicitous letter is unavailing. After careful review of the letter, the Court finds that said letter is not a solicitous one. It did not make false representations, or was drafted in a way that would mislead its recipients. Further, this matter constitutes a fresh impression in this district without a specific Circuit Court precedent. Thus, to impose sanctions against Plaintiffs under Rule 11 under a potential showing of harassment, unnecessary delay, or increase in the cost of litigation as the reason behind the filing of Plaintiffs four requests for opt-in joinder would be an abuse of discretion on the Court's part. However, Plaintiffs' counsel is forewarned that **authorization** to join opt-in members must be previously approved by the Court and the **consent form must provide facts** enabling the employee to make an initial representation to the Court that they are factually "similarly related" to the Plaintiffs already in the complaint.

## IV. CONCLUSION

Since, pursuant to *Reeves* and *Kane*, Plaintiffs were obligated to request the Court's authorization to provide notice, and they did not do so, and, further, the

---

7. Although the standard to authorize is a liberal one there is a standard with the requirement of "minimal evidence" under a "lenient" standard leading to a "conditional certification of a representative class," *Reeves*, 77 F.Supp.2d at 246. The standard is not met simply because plaintiff has outright failed to request consent authority.

8. The consent forms do not provide from the potential plaintiff facts to show that they are "similarly situated" to the plaintiffs originally contained in the complaint. The Court notes that *D'Anna*, 903 F.Supp. at 894–95, requires that "a *preliminary factual showing* be made that a similarly situated group of potential plaintiffs exists." (*emphasis ours*).

consent forms' lack factual basis of "similarity" to "opt-in", leaves the Court with no other choice but to **GRANT** Hershey's request to **STRIKE** the consent forms from the record. (Docket No. 12). Accordingly, Plaintiffs four motions requesting joinder are **DENIED WITHOUT PREJUDICE.** (Docket Nos. 8, 10, 11, and 24). Finally, having found that the letter plaintiffs utilized to inform potential members of the class was not solicitous, Hershey's request for sanctions under Rule 11 is **DENIED.** (Docket No. 32).

The Court understands that, in this fashion, it strikes a balance—on the one hand authorizing a liberal act in provisions under § 216(b) of the FLSA, compared to class action requirements under Fed. R.Civ.P. 23(b)(3), and, on the other, avoiding potential misguided and unethical solicitous actions.

**IT IS SO ORDERED.**