**ENKHBAYAR CHOIMBOL, et al, Plaintiffs,**

v.

**FAIRFIELD RESORTS, INC., et al., Defendants.**

**No. CIV.A. 2:05CV463.**

United States District Court, E.D. Virginia, Norfolk Division.

Nov. 7, 2006.

Avery Tillinghast Waterman, Jr., Patten Wornom Hatten & Diamonstein LC, Newport News, VA, for Plaintiffs.

David Frederick Dabbs, Jonathan Paul Harmon, McGuirewoods LLP, Richmond, VA, Ruth Litvin Goodboe, McGuirewoods LLP, Lisa Ann Bertini, Bertini O'Donnell & Jochens, Norfolk, VA, Michael L. Heikes, Heikes & Rugless PC, Williamsburg, VA, David Christopher Burton, Melissa Leigh Lykins, Sara Berg Rafal, Williams Mullen, Virginia Beach, VA, for Defendants.

## MEMORANDUM OPINION & ORDER

JACKSON, District Judge.

■ This matter is before the Court on Enkhbayar Choimbol, et al., ("Plaintiffs") Motion for Class Certifications and Notices under Rule 23 of the Federal Rules of Civil Procedure and Section 216(b) of the Fair Labor Standards Act ("FLSA"), filed on March 28, 2006 and Plaintiffs' Supplemental Motion for Certifications and Notices filed on May 1, 2006.[1] For the reasons that follow, Plaintiffs' Motions for Class Certification and Notices are **GRANTED IN PART** and **DISMISSED IN PART**.

### I. FACTUAL AND PROCEDURAL HISTORY

Plaintiffs are current or former employees of Fairfield Resorts Inc., Robert W. "Bob" Nunnery ("Nunnery"), Petra Chemical & Consulting, Inc. ("PC & C"), HK Services, Inc. ("HK Services"), Mykhaylo "Mike" Sandulyak ("Sandulyak"), Kelly Kahler, Dan Carusone, Steve Sharkey, Bill Cyphers, Kingsgate Property Owners Association ("Kingsgate"), A to Z Best Services Inc. ("A to Z"), and Governor's Green Vacation Owners Association, Inc. ("Governor's Green") (collectively "Defendants").

---

1. Under FLSA, Plaintiffs must first seek conditional certification and then if granted, discovery is conducted to allow the court to determine if final certification is appropriate.

*See Mooney v. Aramco Servs. Co.,* 54 F.3d 1207 (5th Cir.1995). Accordingly, Plaintiffs' Motion will be treated as one for Conditional Class Certification and Notices.

Fairfield is a Florida corporation engaged in the timeshare business with its headquarters and principal place of business in Orlando, Florida. Fairfield does substantial business in the Eastern District of Virginia including particularly at its Kingsgate, Governor's Green, and Patriot Place timeshare locations. Fairfield enlisted the services of Sandulyak and Nunnery to recruit and hire immigrants to perform laundry, housekeeping, and other grounds maintenance services at Fairfield's properties in Williamsburg, Virginia. Sandulyak, operating under the name Carolina Janitorial, is a regional provider of immigrant labor that conducted business with Ambassador Hospitality ("Ambassador") and Proline Management ("Proline"), national providers of immigrant labor that are commonly owned, staffed and operated.[2]

Before March 6, 2002, Ambassador contacted Fairfield about providing immigrant labor for its resort and hotel services. In response, Fairfield referred Ambassador to Nunnery who negotiated an agreement with Ambassador, in the name and on behalf of Fairfield. This agreement was forwarded to Fairfield's District Property Manager, Rand Gritts, who signed the agreement on receipt. The agreement provided that Plaintiffs would remain employees of Carolina Janitorial, and thus be Carolina Janitorial's sole responsibility. Further, the agreement provided that Fairfield had no right to supervise, direct or control Plaintiffs. Through foreign visits and the internet, Sandulyak began recruiting Plaintiffs in Mongolia, Russia, Ukraine, Slovakia, America and elsewhere to provide housekeeping, grounds keeping, and other similar services to Fairfield.

However, contrary to the agreement, once Plaintiffs were employed on Fairfield's premises, Sandulyak did not supervise, direct or control Plaintiffs' work. There was no Carolina Janitorial manager on premises, and Sandulyak visited Fairfield's premises only once every 1–3 months. During the relevant times, Nunnery actually supervised, directed and controlled Plaintiffs day-to-day work. This framework continued for over a year.

On April 21, 2003, Nunnery, on behalf of Fairfield, terminated the contract that existed between Fairfield and Ambassador. At that time, Nunnery, as the sole shareholder of PC & C, entered into a new contract on behalf of Fairfield whereby Ambassador continued the previous working relationship, but decreased the per worker hour compensation from $9.50 to $9.35. Business between Nunnery, PC & C, Fairfield, Ambassador, and Sandulyak continued under this agreement for approximately two years.

During the relevant time periods, Nunnery, acting on behalf of and for the benefit of Fairfield, PC & C and HK Services, supervised Plaintiffs as they provided services to Fairfield. Further, Nunnery, on behalf of the aforementioned parties, kept track of Plaintiffs weekly hours through the use of contract labor summaries, otherwise known as timecards. Nunnery forwarded these timecards, through either email or telefax, to Ambassador, Proline, Sandulyak, and Carolina Janitorial. Once received, the hours would be divided and invoiced by work areas and sent, by telefax, to PC & C.

Through HK Services, Nunnery, as sole shareholder, was also able to provide im-

**2.** Genesis Management Services Corporation ("Genesis Management") and Genesis Janitorial Services, Inc. ("Genesis Janitorial"), are parent and/or sister companies of Ambassador and Proline. Genesis Management, Genesis Janitorial, Ambassador, and Proline have all been named Third–Party Defendants by Defendants Fairfield and PC & C. Subsequently, Ambassador filed a counterclaim against Defendants Fairfield and PC & C and a cross claim against Defendant Nunnery.

migrant labor to Fairfield without Ambassador or Proline serving as the "middleman." Nunnery also supervised, directed and controlled the immigrants recruited through HK Services. Additionally, during this period of time, the payment hierarchy first worked as follows: Fairfield paid money for Plaintiffs' services to Nunnery, who then paid Ambassador, which paid Carolina Janitorial, who then paid Plaintiffs. However, Nunnery began withholding money, converting it for his own personal use, and failing to pay Ambassador. Accordingly, the hierarchy for payment changed as follows: Fairfield paid monies for Plaintiffs' services to Ambassador directly, who then paid Carolina Janitorial, who then paid Plaintiffs. However, even with the latter payment structure in place, Plaintiffs allege that they worked over 40 hours per week, and were not paid overtime. Plaintiffs allege that Fairfield, Nunnery and PC & C conspired with Ambassador and Proline to label Plaintiffs as "subcontractors" or "contractors" instead of "employees" so as to avoid paying overtime, and any legal liability associated with such failure to pay overtime. Plaintiffs allege further that, during this time, they were required to pay deposits to Sandulyak, Carolina Janitorial, and Nunnery as a condition of working.

On or about March 30, 2005, Ambassador sent Fairfield a new agreement that increased the hourly rate to $9.85. Ambassador proposed that Fairfield implement a new labor model by staffing with its own employees under the "H2b Visa Program" instead of using Sandulyak and Carolina Janitorial. Fairfield agreed to try the H2b Visa Program and the agreement was redrafted with a provision for another hourly rate increase to $10.50, plus overtime. Ultimately, Fairfield failed to sign the new agreement. From March 28, 2005 to May 8, 2005, Fairfield continued to use the payment structure that was in place under the old agreement. On May 9, 2005, Fairfield terminated approximately twenty-two immigrant workers, whose wages had previously been withheld by Nunnery. Further, Nunnery, on behalf of Fairfield, advised Ambassador that Fairfield would be terminating their contract. However, Fairfield told Sandulyak and Carolina Janitorial that the immigrant workers had instead abandoned their positions. At this time, Fairfield allowed Nunnery, HK Services, and PC & C to take the place of Ambassador. Throughout this time, although Fairfield represented that Nunnery, HK Services, and PC & C were mere contractors, they engaged in actions and received benefits of an employee.

Shortly thereafter, Fairfield stopped utilizing the services of Nunnery, HK Services and PC & C. Fairfield enlisted and contracted A to Z, another provider of immigrant workers (operating out of New York), to recruit workers for Fairfield's various locations, including Governor's Green. As Fairfield's new "middleman," A to Z supervised, directed and controlled the daily assignments of the workers. Again, although Fairfield represented that A to Z was a mere contractor, A to Z engaged in the actions and received the benefits of an employee.

Plaintiffs allege that by February, 2006, Fairfield knowingly delayed paying the hourly wages of immigrant workers through A to Z for weeks. As a result, A to Z threatened to cause a work stoppage by the workers. Due to their strained relationship, Fairfield once again, replaced its middleman. A to Z was replaced by SCC of Miami ("SCC"). Presently, SCC funnels immigrant labor to Fairfield, specifically, Latino and/or Hispanic workers.

Plaintiffs alleges that Fairfield continues to conspire with both, A to Z and SCC to manipulate and falsify hourly rates of immigrant workers by misrepresenting the minimum wage and overtime pay for which

they are entitled. Plaintiffs allege that Fairfield preyed and continues to prey on the ignorance of the majority of immigrant workers who could not and still cannot speak, read or write the English language.

On August 8, 2005 Plaintiffs filed their initial complaint which made reference to a class action and requested approval to send Notice and Consent forms to all potential plaintiffs of the right to file a written consent to join.[3] However, Plaintiffs did not file a formal motion for class certification along with a Memorandum in Support of Motion to Certify Class, until on or about March 28, 2006. On March 30, 2006, Fairfield filed a Motion to Stay Plaintiffs' Motion to Certify the Class.[4] On April 4, 2006, Plaintiffs filed a Memorandum in Opposition to Fairfield's Motion to Stay Plaintiffs' Motion to Certify the Class. On April 5, 2006, the Court DENIED Fairfield's Motion to Stay and directed Fairfield to file a response to Plaintiffs' Motion for Class Certification.

On April 19, 2006, Fairfield filed its Memorandum in Opposition to Plaintiffs' Motion to Certify a Class.[5] On the same date, Nunnery, Petra and HK Services also filed a Memorandum in Opposition to Plaintiffs' Motion for Class Certification. On April 26, 2006, Plaintiffs filed a Reply Memorandum in Support of Plaintiffs' Motion for Class Certification and Notices.

On May 1, 2006, Plaintiffs filed a Supplemental Motion for Certifications and Notices, along with a Memorandum in Support of the Supplemental Motion for Class Certifications and Notices. On May 5, 2006, Fairfield filed a Memorandum in Opposition to Plaintiffs' Motion for Supplemental Certifications and Notices. On May 18, 2006, Plaintiffs filed a Reply. On July 13, 2006, the Court held a hearing on Plaintiffs' Motion for Class Certifications and Notices. After carefully reviewing the parties' pleadings, the Court finds this matter ripe for adjudication.

Plaintiffs move the Court for final Class Certification of the collective claims and notices of an "op-out" class under Federal Rule of Civil Procedure Rule 23 for all claims under the Racketeer Influenced and Corrupt Organization Act ("RICO") and under Virginia common law for civil conspiracy and fraud. Plaintiffs also move the Court for an "op-in" collective action under 29 U.S.C. § 216(b) (2000) for all claims under the Fair Labor Standards Act of 1938 ("FLSA"). Inasmuch as the Court has previously determined that Plaintiffs' claims under RICO and the common law claims of conspiracy and fraud are preempted by claims alleged under the FLSA, Plaintiffs' motion for a Rule 23 class action and notices is deemed MOOT and DISMISSED.[6] Accordingly,

---

**3.** Plaintiffs made reference to a class action; however, class certification must be sought by a formal motion for class certification and therefore the Court did not entertain the request until the formal motion was brought before the Court on or about March 28, 2006.

**4.** On March 28, 2006, Fairfield filed under seal a Motion to Disqualify Counsel for the Plaintiffs because they obtained and used Fairfield's confidential attorney-client privileged information. Later that same day, Plaintiffs filed a Motion for Class Certification. Fairfield's Motion moved the Court to Stay Plaintiff's Motion for Class Certification

pending the Court's decision on Fairfield's motion to disqualify counsel.

**5.** On April 18, 2006, Ambassador, Genesis Management, Genesis Janitorial and Proline ("Third Party Defendants") also filed an Opposition to Plaintiff's Motion to Certify a Class. On June 16, 2006, this Court granted Third Party Defendants' Motion to Dismiss Fairfield's Third–Party Complaint. Accordingly, Ambassador, Genesis Management, Genesis Janitorial and Proline are no longer a party to this matter.

**6.** Moreover, although the Fourth Circuit has not directly examined whether plaintiffs seek-

the Court is left to consider Plaintiff's Motion for conditional certification of collective action pursuant to 29 U.S.C. § 216(b). The named Plaintiffs seek to include the following individuals in the collective action:

All persons who worked at Fairfield Resorts in any way through Ambassador Hospitality Solutions, Inc., Petra Chemical & Consulting, Inc. ("Petra") and/or HK Services, Inc. ("HKS") at any time since March 6, 2003, including particularly without limitation any persons who worked through Mykhaylo "Mike" Sandulyak, Carolina Janitorial, Inc. and/or Carolina Janitorial (collectively "Carolina Janitorial") since that time.

Furthermore, Plaintiffs seek to certify as two additional subclasses the following: (1) those individuals who were charged "deposits" by HKS, Nunnery, Carolina Janitorial and/or Sandulyak as a condition of working, and; (2) those individuals whose "wages were withheld altogether in 2005" by Petra, Nunnery, Carolina Janitorial and/or Sandulyak.

## II. LEGAL STANDARD

■■■ Section 216(b) of the FLSA explicitly provides for the procedures for representative or class actions as follows:

An action to recover the liability prescribed [under the FLSA] may be maintained against any employer in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to [a class] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). It follows that FLSA class certification requires: (1) that the Plaintiffs in the class be "similarly situated," and (2) that the plaintiffs included in the class "opt in" by filing with the Court their consent to the suit. *See Brooks v. BellSouth Telecommunications, Inc.*, 164 F.R.D. 561, 568 (N.D.Ala.1995). Section 216(b) does not define "similarly situated" and the Fourth Circuit has yet to directly apply a standard to an examination of whether a class of plaintiffs are similarly situated within the context of FLSA. However, federal precedent has developed a two-step analysis for establishing "similarly situated" Plaintiffs and granting conditional certification in FLSA cases. *See de Asencio v. Tyson Foods, Inc.*, 130 F.Supp.2d 660, 662 (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir.1995)). The first stage occurs at what is referred to as the notice stage. Here, the district court decides whether to provide initial notice of the action to potential class members. *Id.* at 662–63(citing *Mooney*, 54 F.3d at 1213–14); *see also Severtson v. Phillips Beverage Co.*, 141 F.R.D. 276, 278 (D.Minn.1992). Because the court has minimal evidence, "this determination is made using a fairly lenient standard." *Mooney*, 54 F.3d at 1213–14; *see also Sperling v. Hoffmann–La Roche, Inc.*, 118 F.R.D. 392, 400–02 (D.N.J.1988); *aff'd in part*, 862 F.2d 439, 444 (3d Cir. 1988), *aff'd*, 493 U.S. 165, 110 S.Ct. 482,

---

ing class certification can simultaneously avail themselves of a class action under Rule 23 and FLSA § 16(b), sister circuits and district courts in this circuit have followed the holding in *LaChapelle v. Owens–Illinois, Inc.*, 513 F.2d 286 (5th Cir.1975), which held that there is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA § 16(b). The *LaChapelle* Court noted that Rule 23(c) provides for "opt out" class action while FLSA § 16(b) allows as class members only those who "opt in." These two types of class actions are mutually exclusive and irreconcilable. *Id.* at 288–89.

107 L.Ed.2d 480 (1989) (noting that in the first stage "courts appear to require nothing more than substantial allegations that the putative class member were together victims of a single decision, policy, or plan."); *D'Anna v. M/A–COM, Inc.,* 903 F.Supp. 889, 893 (D.Md.1995). Moreover, "the district court may facilitate this notice by allowing discovery of the names and addresses of potential plaintiffs, by authorizing a notice for plaintiff's counsel to send to potential plaintiffs, or by some other appropriate action." *De Asencio* 130 F.Supp.2d at 663 (citing *Hoffmann–La Roche,* 493 U.S. at 169, 110 S.Ct. 482).

The court proceeds to stage two if the defendant files a motion for decertification, usually after discovery is virtually complete. *Id.* Accordingly, throughout the second stage, courts apply a heightened fact specific standard to the "similarly situated" analysis. *Id.* Upon a determination that the plaintiffs establish the burden of proving they are "similarly situated", the collective action proceeds to trial. *Id.* On the contrary, if the court determines that the plaintiffs are in fact, not "similarly situated", the class is decertified and the original plaintiffs proceed on their individual claims. *Id.*

### III. DISCUSSION

■ In the instant case, the Court's concern is whether Plaintiffs meet their burden under the first stage of the "similarly situated" analysis. Defendants first argue, however, that before granting certification, the Court must determine whether Fairfield is a joint employer as to each potential Plaintiff and putative member. Specifically, Defendants contend that this issue underscores the need for a highly individualized fact-intensive examination demonstrating the inappropriateness of conditional collective certifications. Defendants also argue that Plaintiffs have failed to provide or identify any admissible factual support necessary for certification. The

Court disagrees. The district court has the discretion even when the court "has minimal evidence" to grant Plaintiffs' a "conditional certification" of a representative class. *See De Asencio,* 130 F.Supp.2d at 662.

Resolution of the issues raised by Defendants, though certainly pivotal to the Court's ultimate determination of whether Plaintiffs will proceed to trial as a collective class, is not essential to 'stage one' analysis for conditional certification. As mentioned, at this stage the inquiry is necessarily limited because the exact contours of the representative class members is largely unknown. Consequently, in employing this more lenient standard, the court will consider whether the Plaintiffs are "similarly situated with respect to the legal and, to a lesser extent, the factual issues to be determined." *De Jesus De Luna–Guerrero v. The North Carolina Grower's Assoc.,* 338 F.Supp.2d 649, 654 (E.D.N.C.2004) (citing *Kearns, The Fair Labor Standards Act,* § 18.IV.D.3). Specifically, the Court will examine whether the Plaintiffs "raise a similar legal issue as to coverage, exemption, or nonpayment or minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions, but their situations need not be identical." *Id.; See also Camper v. Home Quality Management Inc.,* 200 F.R.D. 516, 520 (D.Md.2000) (holding that class actions within the FLSA require a showing that potential plaintiffs were subjected to a common policy and scheme).

The Court finds that Plaintiffs meet the requisite showing for conditional certification under the "stage one" analysis. First, as mentioned, the named Plaintiffs and putative collective action members are all persons who worked at Fairfield Resorts in any capacity through Ambassador, Pe-

tra and/or HKS at any time since March 6, 2003, including particularly without limitation any persons who worked through Mykhaylo "Mike" Sandulyak, Carolina Janitorial, Inc. and/or Carolina Janitorial (collectively "Carolina Janitorial") since that time. The subclasses separate named Plaintiffs according to the particular Fairfield entity which supervised and/or managed the individual Plaintiff and whether the Plaintiff was allegedly charged "deposits" as a condition for working or had wages withheld altogether. These distinctions do not work to subject Plaintiffs to factually distinct defenses which would work to undermine the benefit associated with collective actions, including judicial economy and efficiency by avoiding multiple lawsuits and repetitious evidence. *See Hoffmann*, 493 U.S. at 170–71, 110 S.Ct. 482 (holding that the purpose of collective actions is to serve judicial interests through resolution of a single proceeding of claims rooted in common issues of law and fact).

Again, plaintiffs seeking conditional certification need only make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law. *See De Asencio*, 130 F.Supp.2d at 662–63; *see also Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F.Supp.2d 91 (S.D.N.Y.2003). All of the Plaintiffs allege that they were victims of Defendants' predominant policy of withholding minimum wages and overtime pay in violation of the FLSA. There is no question that, as required under the conditional certification analysis, Plaintiffs name Fairfield entities allegedly engaged in a common policy and scheme which violated the FLSA, whether done by requiring "deposits" or withholding of wages. All Plaintiffs also seek backpay for unpaid minimum and overtime wages owed to them under the FLSA. Second, the named Plaintiffs consists of over 60 individuals, all immigrant workers alleging those common violations. Third, Plaintiffs have provided the Court with Affidavits of at least one Fairfield manager suggesting a common policy affecting Plaintiffs in this case. Finally, the Court has not found that, as suggested by Defendants, there are significant individualized questions of law and facts which would compel the Court to deny conditional certification in this instant case. Therefore, Plaintiffs' Motion for Conditional Class Certification and Notices under the FLSA and subclasses is **GRANTED**.

## IV. CONCLUSION

It is **ORDERED** that Plaintiffs' Motion for Conditional Class Certification and Notices under Rule 23 of the Federal Rules of Civil Procedure is **DISMISSED** as **MOOT**.

**IT IS FURTHER ORDERED** that pursuant to 29 U.S.C. § 216(b) a Conditional Class Certification and Notices under FLSA including subclasses, is **GRANTED** for the named Plaintiffs to include the following employees in the collective action:

(1) All persons who worked at Fairfield Resorts in any way through Ambassador Hospitality Solutions, Inc., Petra Chemical & Consulting, Inc. ("Petra") and/or HK Services, Inc. ("HKS") at any time since March 6, 2003, including particularly without limitation any persons who worked through Mykhaylo "Mike" Sandulyak, Carolina Janitorial, Inc. and/or Carolina Janitorial (collectively "Carolina Janitorial") since that time;

and subclasses of

(2) those individuals who were charged "deposits" by HKS, Nunnery, Carolina Janitorial and/or Sandulyak as a condition of working; and,

 

(3) those individuals whose "wages were withheld altogether in 2005" by Petra, Nunnery, Carolina Janitorial and/or Sandulyak.

**IT IS FURTHER ORDERED** that the Defendants shall provide to Plaintiffs' counsel the names and last known addresses of all potential members of the conditionally certified class and subclasses within fifteen (15) days of the date of this Order;

**IT IS FURTHER ORDERED** that Plaintiffs' counsel shall circulate notices of pendency and consent to joinder to all potential members of the conditionally certified class and subclasses;

**IT IS FURTHER ORDERED** that within thirty (30) days of the date of this Order Plaintiffs' counsel shall provide the Court with a proposed form of notice to potential members to be approved by the Court;

**IT IS FURTHER ORDERED** that, if necessary, the parties are granted leave for sixty (60) days from the date of this Order to conduct limited discovery solely on the issue of 29 U.S.C. § 216(b) class certification; the parties shall immediately confer and stipulate to any relevant disputed facts in order to tailor the scope of and the need· for discovery; and the parties shall also confer with the Court with respect to the determination of scope and parameters of such discovery;

**IT IS FURTHER ORDERED** that any consents to joinder in this action by which additional persons join this litigation as plaintiffs under 29 U.S.C. § 216(b) must be filed with the Clerk of the Court no later than sixty (60) days after the date of this Order or the providing to Plaintiffs' counsel by Defendants of the names and last known addresses of all potential members of the conditionally certified class and subclasses, which ever date is later;

**IT IS FURTHER ORDERED**, to facilitate settlement, that the Plaintiff shall provide the Defendants with the number of unpaid overtime hours owed Plaintiffs, if known, with supporting documentation, if any, no later then December 1, 2006;

**IT IS FURTHER ORDERED**, that the parties shall return to another settlement conference on a date to be determined by the Court; and

**IT IS FURTHER ORDERED**, that the filing of all dispositive motions are **STAYED** until further order of this Court.

The Court **DIRECTS** the Clerk to send copies of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED.**